# RECEIVED

## NOV 1 8 2013

Marilynn English
97 Pease Avenue
Verona, New Jersey 07044

AT 8:30_____M
WILLIAM T WALSH, CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MARILYNN ENGLISH Pro Se

Plaintiff,

Civil Action No. 13-2028 (CCC)

v.

FEDERAL NATIONAL MORTGAGE
ASSOCIATION, FEDERAL HOME
LOAN MORTAGE CORPORATION,
BANK OF AMERICA N.A.

Defendants

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

Marilynn English
97 Pease Avenue
Verona, New Jersey 07044

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARILYNN ENGLISH *Pro Se*

Plaintiff,                                    Civil Action No. 13-2028 (CCC)

v.

**PROOF OF SERVICE**

FEDERAL NATIONAL MORTGAGE
ASSOCIATION, FEDERAL HOME
LOAN MORTAGE CORPORATION,
BANK OF AMERICA N.A.

Defendants

On December 17, 2013, copies of the Second Amended Complaint with Exhibits were

delivered to Evelyn Bernal Yaffe, Esq. and Jeffrey P. Catenacci. Esq. by USPS Return

receipt requested no. 7013 1710 0000 5208 1200 and to Vladimir Palma, Esq. via USPS

return receipt requested no. 7013 1710 0000 5208 1217.

Marilynn English *Pro Se*

## TABLE OF CONTENTS

PROCEDURAL HISTORY      Page 1

STATEMENT OF FACTS      Page 2

PRO SE LITIGANTS      Page 2

STANDARD FOR DISMISSAL      Page 3

COUNT I – QUIET TITLE      Page 3

COUNT II – MATERIAL DISPUTES OF FACT      Page 5

COUNT III – NAME OF THE OWNER OF THE NOTE
AND MORTGAGE IS UNKNOWN      Page 6

COUNT IV – SEPARATION OF THE NOTE
AND MORTGAGE      Page 7

COUNT V – BREACH OF CONTRACT      Page 8

COUNT VI A. FRAUD   DEFENDANTS HAD KNOWLEDGE      Page 9
OF THE   FRAUD AND LET IT STAND. DEFENDANTS
PROVIDED FALSE INFORMATION TO PLAINTIFF
A. FRAUD      Page 9
B. MISREPRESENTATION      Page 10

COUNT VII – FRADULENT CONVEYANCE      Page 12

COUNT VIII – NEW JERSEY CONSUMER FRAUD ACT      Page 13

COUNT IX – QUIA TIMET      Page 15

PLAINTIFF HAS STANDING TO CHALLENGE THE      Page 15
ASSIGNMENT

MERS AND THE PAID OFF 2002 MORTGAGE      Page 16

-i-

REGISTRY OF DEEDS                                                Page 18

IRREGLARITIES ADDRESSSED BY NJ SUPREME COURT                     Page 18

OTHER VIOLATIONS                                                 Page 20

CLAIMS FOR RELIEF
COUNT I. – QUIET TITLE                                           Page 20

COUNT II – MATERIAL DISPUTES OF FACT                             Page 21

COUNT III – NAME OF THE OWNER OF THE NOTE AND                    Page 22
MORTGAGE IS UNKNOWN

COUNT IV SEPARATION OF THE NOTE AND MORTGAGE                     Page 22

COUNT V – BREACH OF CONTRACT                                     Page 23

COUNT VI – A. FRAUD AND B. MISREPRESENTATION                     Page 23

COUNT VII – FRAUDULENT CONVEYANCE                                Page 23

COUNT VIII – NEW JERSEY CONSUMER FRAUD ACT                       Page 24
AND THE RICO ACT

COUNT IX – QUIA TIMET                                            Page 24

CONCLUSION                                                       Page 24

CERTIFICATION                                                    Page 25

-ii-

## TABLE OF CITATIONS

Bank of America v Raftogianis 418 N.J. Super, 324 (Ch. Div. 2010)          Page 19
    New Jersey Chancery Court

Bayron v Trudeau, 702 F. 2d 43,45 (2d Cir. 1983)                          Page 2

Bell Atlantic v Twombley, 550 U.S. 544, 570, 127 S.C. 1955 ,
1974 167 L. Ed. 2d 929 (2007)                                            Page 3

David Bucholz, Case No. 90-35482, United States Bankruptcy                Page 17
    Couut for The District of New Jersey, 224 B.R. 13 August, 1998

Carpenter v Longan, 16 Wall, 271, 83 U.S. 271, 274, 21 L. Ed.             Page 8
    313 (1872)

Eloisa Cosajay v Mortgage Electronic Registration Systems, Inc. et al      Page 17
    C.A. No. 10443 M, United States District Court for the District
    Of Rhode Island, November 5, 2013

Estelle  v Gamble, 429 U.S. 97, 112 (1976)                                Page 2

Garet Giles v Bank of America Unites States District Court for            Page 19
    The Western District of Texas, San Antonio

Thomas Glaski v Bank of America, National Association                     Page 15
    Et al. FO64556 Court of Appeals, California, Fifth Appellate
    District July 31, 2013

Haines v Kerner, 404 U.S. 519, 520-21 (1972)                             Page 2

Hughes v Rowe, 449 U.S. 5,6-10 (1980)                                     Page 2

John T. Kemp v Countrywide, United States Bankruptcy                     Page 6
    Court for the District of New Jersey

Clinton B. Kirby v Bank of America N.A. et al United States               Page 10
    District Court for the Southern District of Mississippi Case No.
    2:09-CV-00182- DCH-JMR

Landmark National Bank v Boyd A. Kesler, Supreme Court of Kansas     Page 16
August 2009

Herbert A. McFadden, Rosetta E. McFadden v Federal     Page 5
National Mortgage Association, Flagstar Bank No. 12-1125
United States Court of Appeals for the Fourth Circuit,

Madyunn v Thompson, 657 F. 2d 868, 876 (6th Cir. 1981)     Page 2

New Jersey Citizen Action v Schering Plough Corp, 367 N.J.     Page 13
Super 8 12-13 (App. Div. 2003).

Perez v Rent-A-Center, Inc., 186 N.J. 5 188, 219 (2006)     Page 13

Petra Martinez, Plaintiff-Appellant v America's Wholesale     Page 5
Lender, Countrywide Home Loans Servicing, Bank of America
No. 10-15843, Unites States Court of Appeals for the Ninth
Circuit 446 Fed. Appx. 940; 2011

Jason Ranson, v Bank of America Civil Action No. 3:12   5616     Page 11
United States District Court for the Southern District of West
Virginia, Huntington Division, March 14, 2013

Willliam Suser, Appellant/Plaintiff,  v Wachovia Mortgage FSB,     Page 18
Et. al, Docket No. A-1330-12T2 Superior Court of New Jersey
Appellate Division, November 4, 2013

United States Court of Appeals for the Second Circuit 300 F.     Page 14
2d 745; 1961 SEC v Capital Gains Research

Williams v Kullman, 722 F. 2d 1048, 1050 (2d Cir. 1983)     Page 2

Wozniak v. Penella,  373 N.J. Super, 445, 456 (App. Div. 2004)     Page 13

Marilynn English
97 Pease Avenue
Verona, New Jersey 07044

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARILYNN ENGLISH Pro Se

          Plaintiff,                         Civil Action No. 13-2028 (CCC)

v.

FEDERAL NATIONAL MORTGAGE
ASSOCIATION, FEDERAL HOME
LOAN MORTAGE CORPORATION,
BANK OF AMERICA N.A.

          Defendants

## PLAINTIFF'S SECOND AMENDED COMPLAINT

## PROCEDURAL HISTORY

Appellant, Marilynn English brought Quiet Title Action to remove

any claims or encumbrances to the property located at 97 Pease Avenue,

Verona, New Jersey 07044, Essex County, New Jersey. The remedy in New

Jersey is a statutory remedy pursuant to N..J.S.A. 2A:62-1 and R 4:62-1 The statute

specifically provides that a person in peaceful possession, such as Plaintiff, may

file such Action to Quiet Title, in order to "settle the title to such lands and to clear

up all doubts and disputes", thereby removing any clouds on the title to the subject

property.

1

## STATEMENT OF FACTS

1 . On March 21, 2003, Plaintiff allegedly obtained a 15 year fixed refinance in the amount of $315,750. The purpose of this loan was to pay off a first and second loan with Countrywide, America's Wholesale Lender and combine them into one 15 year fixed mortgage. The lender on this loan was America's Wholesale Lender and the entity paid was Countrywide Home Loans Servicing LLC Lines 1501 and 1502 of the HUD. There is no mention of Mortgage Electronic Registration Systems, Inc. as the lender or the entity paid. These facts would question the validity of the discharge of mortgage" for loan number 20249689 which Plaintiff is questioning and would question yet another break in the chain of title.

## PRO SE LITIGANTS

According to S.C.O.T.U.S., Pro Se pleadings generally are held to less stringent standards than those applied to members of the Bar. See Hughes v Rowe, 449 U.S. 5,9-10 (1980), Haines v Kerner, 404 U.S.. 519, 520-21 (1972), Madyun v. Thompson, 657 F. 2d 868, 876 (7th Cir. 1981).

Pro se complaints should not be dismissed for failure to state a claim unless it is apparent that they are unsupportable in law or fact. See Williams v. Kullman, 722 F. 2d 1048, 1050 (2d Cir. 1983), Bayron v Trudeau, 702 F. 2d 43, 45 (2d Cir. 1983).

Affidavits and other evidentiary materials usually are needed to furnish sufficient facts to decide a pro se litigant's case. See Estelle v. Gamble, 429 U.S. 97, 112 (1976). Plaintiff produced a Notarized Affidavit from John O'Brien, Essex

County, Mass. Deed of Registrations and produced two Audits as well.

## STANDARD FOR DISMISSAL

In determining whether to grant a Rule 12(b)(6) motion, the court shall not dismiss a complaint if it includes "*enough facts to state a claim for relief that is plausible on its face.*" Bell Atlantic Corp. V. Twombley, 550 U.S. 544, 570, 127 S.C. 1955, 1974 167 L. Ed. 2d 929 (2007). The Court "*must view the complaint in the light most favorable to the Plaintiff and accept all of the Plaintiff's well-pleaded facts as true."*

## COUNT I - QUIET TITLE

Plaintiff sought an Order to Quiet Title in order to render the property Marketable pursuant to N.J.S..A. 2A:62-1.

This action arises out of failure of Plaintiff to obtain bona-fide information with regard to missing Assignments, fraudulent transfers and robo-signing, all of which have rendered my title corrupt as evidenced by the Notarized Affidavit of John O'Brien attached as Exhibit 1.

Plaintiff was denied the ability to obtain crucial discovery information either through QWR (Qualified Written Requests) or through a Notice of Default issued to the Defendants..

In order to resolve certain disputes which can arise over title to real estate, such as the case at bar, the New Jersey Legislature has provided a process by which a party in peaceful possession of the real estate can protect or clear up the title to his/her property. If another entity, such as Defendants here, raise a claim or maintain a lien or other encumbrance, the party in possession is entitled to

3

commence a lawsuit to "quiet title" and thus resolve any outstanding issues relating
to the said title. The remedy in New Jersey is a statutory remedy pursuant to
N.J.S.A. 2A:62-1 et seq. The statute specifically provides that a person in peaceful
possession, such as Plaintiff, may file such Action to Quiet Title, in order to "settle
the title to such lands and to clear up ALL doubts or disputes", thereby removing
any clouds on the title to the subject property. In Adams v Eastern Saving Bank,
the N.J. Appellate Court voided a mortgage obtained from a fraudulent Assignment and
invalidated the liens.

Defendants should be estopped and barred from any lien on the subject
property.

This complaint is also made pursuant to N.J.S.A. 59:2-9 Slander of Title,
N.J.S.A. 25:2-1 ( "NJFCA") New Jersey Fraudulent Conveyance Act, N.J.S.A. 25:2-
20, The Uniform Fraudulent Transfer Act ("UFTA") and Quia Timet as well as several
Violations of the Uniform Commercial Code.

With regard to the alleged Freddie Mac loan originated in 2002, when I input
the address on the MERS website, I received the name of the servicer as Bank of
America and the name of the investor as both Fannie Mae and Freddie Mac. This
information was previously sent to the Court. The alleged loan generated in 2002 bore a
loan number of 20249689. However, Bank of America was never the servicer for
this loan which was allegedly paid in 2003.

John O'Brien's statements in regard to his Affidavit are attached as
Exhibit 2.

The fraudulent actions of the Defendants have clouded the title to Plaintiff's

4

property. These fraudulent actions include one assignment in 11 years, regardless of the fact that there appear to have been no less than eight transfers. Any electronic transfer of the Mortgage may have been executed without recording within the Official records of the Essex County, New Jersey Registry and are void under Uniform Electronic Transactions Act (UETA) USC § 15-96-1-7003. The only Assignment, dated in 2011, Exhibit 3, is signed by a known robo-signer, Chester Levings. Mr. Levings and his Associate Evette Ohanian are addressed in the report from Audit Securitization Audit International attached as Exhibit 4. This Audit also addresses the Quiet Title claim. In The case Petra Martinez, Plaintiff – Appellent v America's Wholesale Lender, Countrywide Home Loans Servicing, Bank of America No. 10-15843, United States Court of Appeals for the Ninth Circuit 446 Fed. Appx. 940: 2011 the quiet title claim was remanded as was the case Herbert A. McFadden, Rosetta E. McFadden, v Federal National Mortgage Association, Flagstar Bank No. 12-1125, United States Court of Appeals for The Fourth Circuit, May 20, 2013,

## COUNT II - MATERIAL DISPUTES OF FACT

1. David in the Lien Release Department of Bank of America (1-800-669-4807) advised me on Thursday, December 5, 2013 that my balance on the alleged loan is $207,082.68. Yet Attorney Yaffe advised Judge Falk in our "settlement conference" that the balance was $299,000.

2. Plaintiff has no back up or supporting documents to prove the amount allegedly outstanding by Attorney Yaffe.

2. With regard to the alleged loan originated in 2002 and refinanced in 2003, loan Number 20249689, I have asked for the paid note and mortgage and a copy of the wire

transfer or check proving which entity was paid and by whom.  I was advised that neither

MERS or Bank of America have this information; nor do they have a copy of the paid

note. One can only assume that the note and mortgage were separated in that loan as well.

This would certainly give validity to the Countrywide Annual Report which states

"nearly all of the mortgage loans that we originate or purchase in our Mortgage

Banking and Capital Market Segments are sold into the secondary mortgage

market primarily in the form of securities and to a lesser extent as whole loans" .

Exhibit 5, as well as give validity to the deposition of Linda De Martini in the Kemp

v Countrywide case.

I have requested *an* investigation into the source of funding for the 2002 payoff

and the information with regard to the entity paid and the dollar amount.

As there is no evidence that my 2002 note was ever cancelled, this lack of same has

clouded my chain of title. My questioning of the undisputable fact is the

cancellation of the 2002 Note. Perhaps Attorney Palma can provide it.

The mortgage was discharged by an entity that did not fund the loan or have any

lending authority. See HUD attached as Exhibit 6, together with Discharge provided

by Attorney Palma  Exhibit 7.

## COUNT III - NAME OF THE OWNER OF THE NOTE AND MORTGAGE IS UNKNOWN

A party seeking to enforce a Mortgage must prove that it owns or controls the

underlying debt . U.S.C. § 3-301.

Plaintiff attempted to obtain the name of the owner of her Note and Mortgage

for more than three years.  Plaintiff also requested where I could view the original

6

note and mortgage with the wet ink signatures. I never received a response to the latter. Several QWR (Qualified Written Requests) letters were sent to the servicer per the terms of the Dodd Frank Act. Plaintiff received documents from Attorneys Matthew McGuigan and Louise Bowes of Blank Rome in Philadelphia, who represented the servicer, Bank of America. Several non relevant documents were sent to me (Exhibit 8). Eventually Plaintiff received information that the owner of the alleged loan is Fannie Mae at two different locations, Washington DC and Herndon ,Virginia (Exhibit 9). However, it appears that this information is incorrect.

Plaintiff filed a Notice of Default naming Fannie Mae (Federal National Mortgage Association, (FNMA), Bank of America N.A. and Freddie Mac (Federal Home Loan Mortgage Corporation (FHLMC) (Exhibit 10). This document cites UCC violations and holds the three entities liable for failure to respond . None of the Defendants responsed. Based on the terms of the Default Letter, they have no claim to the property or expectation of payment and have waived their rights to same by returning payments

Plaintiff suffered financial damages in the amount of approximately $150,000 by making payments to entities without standing to collect those payments.

In addition, as clear title to the property is questionable, the entire value of the property (Exhibit 11) is affected.

## COUNT IV - SEPARATION OF THE NOTE AND MORTGAGE

The Audit from Certified Financial Loan Auditors (CFLA) dated May 12, 2013 (Exhibit 12) clearly addresses the separation of the Note and Mortgage.

It is a cornerstone and long held concept within Unite States Law, that when the rights to the Tangible Paper Note and the rights to the Security Instrument are separated, the Security Instrument, because it can have no separate existence, cannot survive and becomes a nullity. In Carpenter v Longan, 16 Wall, 271,83 U.S. 271, 274, 21 L. Ed. 313 (1872), the U.S. Supreme Court stated "The note and mortgage are inseparable; the former as essential, the latter an as incident. An assignment of the note carries the mortgage with it, while assignment of the latter alone is a nullity. The mortgage can have no separate existence. When the note is paid the mortgage expires.

## COUNT V – BREACH OF CONTRACT

1. There exists a duty of good faith and fair dealing implied in every contract that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the benefit of their contract.

2. In 2003, Plaintiff and Defendant BANA (by merger with Countrywide) and Fannie Mae and Freddie Mac, through either sale or assignment, which fact can still not be proved, limit each party's rights and responsibilities.

3. The contract provides that Defendant's rights are limited by Title 38 of the United States Code.

4. The contract further provides that Defendant(s) must apply all payments to the account.

5. Defendant's breached the contract by:

       a) discouraging Plaintiff from providing payments for her account;
       b) returning Plaintiff's payments;
       c) Plaintiff was damaged with an increased amount of principal balance due at this juncture;
       d) Plaintiff was also damaged by paying entities without standing to

8

collect the payments.

6. Plaintiff was damaged as a proximate result of Defendants' breach of their

contractual duties.

## COUNT VI FRAUD – AND MISREPRESENTATION DEFENDANTS HAD KNOWLEDGE OF THE FRAUD AND LET IT STAND DEFENDANTS PROVIDED FALSE INFORMATION TO PLAINTIFF

### A. FRAUD

a) Plaintiff advised the Court and the Defendants of the fraudulent Note that

they produced as their Exhibit 2 in their response to the initial complaint (Exhibit

13 in the case at bar). The signatures are dissimilar;

c) The copy of the actual note from the closing is attached as Exhibit 14.;

d) Plaintiff advised the Court and the Defendants of the fraudulent Note, the

Defendants did nothing;

e) Plaintiff advised the Court and the Defendants of the fraudulent title of the

alleged signer on the Indorsement on the Note. This fact was also ignored by the

Defendants;

f) the title of David A.Spector was not as Managing Director, but as Senior

Managing Director. Curriculum Vitae attached as Exhibit 15.

Defendant produced a copy of a Note, the signature of which does not match

the Mortgage signed a few minutes earlier at the closing, or copies of the Note in the

possession of the Plaintiff.

.Defendant, Bank of America advised Plaintiff to stop making payments

a). Defendants representations were false and material;

b) Plaintiff relied on Defendant's misrepresentation.

9

c) Plaintiff's reliance on Defendant's misrepresentations was thus to her detriment.

d) Some payments made by Plaintiff were returned.

The fraudulent job title stamps were addressed in the deposition of Michele Sjolander, current employee of Bank of America N.A., former employee of Countrywide in the case Clinton B. Kirby v Bank of America N.A., et al United States District Court for the Southern District of Mississippi case No. 2:09-CV- 00182- DCB-JMR.

The Court should take notice that Mr. Spector was not affiliated with Countrywide after 2006, yet the Defendants want the Court to believe that the note was indorsed prior to 2006. With an Assignment dated in 2011, that is highly unlikely.

Title 18 .S.C. Chapter 47 § 1021 states "whoever, being an officer or other person authorized by any law of the Untied States to record a conveyance of real property or any other instrument which by such law may b recorded, knowingly certifies falsely that such conveyance or instrument has or has not been recorded, shall be fined under this title or imprisoned not more than five years, or both. .

## B. MISREPRESENTATION

Defendant, Bank of America told Plaintiff that she needed to be three months' late on the mortgage to qualify for a modification from a 15 year fixed term to a 30 year fixed term. Plaintiff asserts these "representations were false and material" and they were made knowingly, recklessly, and /or intentionally. Plaintiff further claims that I relied on these claims to my detriment as my credit

10

suffered severely as a result of the late mortgage payments. These claims are addressed in Jason Ranson, Plaintiff, v Bank of America, N.A., Defendant Civil Action No. 3:12-5616 Untited States District Court for the Southern District of West Virginia, Huntington Division March 14, 2013.

Plaintiff repeatedly sent in paperwork to modify and after two years was told by Sandra Fonte at the Office of the Chairman of Bank of America that *"they could not modify the loan as they did not own it and did not know who owned the loan."* Under U.C.C. § 3-50 (b)(2) or state equivalent, it states that upon your demand *"the person making presentment – that is, the person demanding payment of the Note – must exhibit or present the Note."* Pursuant to this part of the UCC, the Defendants have no right to demand payment until it has produced the physical Note which they do not have.

The Assignment recorded in the County of Essex in the State of New Jersey is a fraudulent document as affirmed and attested to by John O'Brien and previously submitted to the Court as evidence. The recording makes the signers guilty of a third degree crime (N.J.S.A. 2C:28-7(a)(1) and 7(b).

Defendants, Fannie Mae, Bank of America, N.A., and Freddie Mac are not original mortgage lenders, and, therefore, must prove standing, i.e. "ownership or control" of the underlying mortgage and note. The Defendants have not and cannot prove standing to enforce the Note and Mortgage as evidenced by the fraudulent Note that they produced stamped "Original". Together with an Indorsement allegedly stamped by David A. Spector.

U.C.C. § 3-501(b)(2) or the State equivalent further states that the person making

11

presentment also must, upon your demand, give reasonable identification, and, if presentment is made on behalf of another person, provide reasonable evidence of authority to do so. This was not done.

## COUNT VII - FRAUDULENT CONVEYANCE

Defendants, Fannie Mae, Bank of America, N.A., and Freddie Mac are not original mortgage lenders, and, therefore, must prove standing, i.e. "ownership or control" of the underlying mortgage and note. The Indorsement allegedly stamped by David A.Spector, Managing Director, is fraudulent. In reality he was a Senior Managing Director. Curriculum Vitae of Mr. Spector is attached as Exhibit 15..

Plaintiff has proved the following:

(a) the note and mortgage have been separated as proved in the Audit;.

(b) the Assignment is fraudulent as proved in the Notarized Affidavit of John O'Brien, renowned Deed of Registers and confirmed in the second Audit;

© Assignments are missing;

d the Note produced by Defendants is not the Note signed by Plaintiff at the closing and is nothing more than a fraudulent copy originated by an unknown person.

e.Plaintiff filed a police report for Fraud which report was previously produced to the Court.

f. Plaintiff's request for discovery for proof of the name and contact

12

information for the originator of that fraudulent note has been denied by this Court.

Pursuant to 15 USC – Chapter 41 § 1641(g)  Notice of new creditor. Plaintiff has never been advised of any *"new creditor"*.

## COUNT VIII – NEW JERSEY CONSUMER FRAUD ACT AND THE RICO ACT

Under The New Jersey Consumer Fraud Act ("CFA"), [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice, [N.J.S.A. § 56:8-2].

The purpose of the CFA is to protect consumers by eliminating sharp practices and dealings in the marketing of merchandise and real estate. Perez v. Rent-A-Center, Inc., 186 N.J. 5 188, 219 (2006). Under the CFA, a claimant need not prove intent to commit an unconscionable commercial practice. Wozniak v. Penella, 373 N.J. Super. 445, 456 (App. Div. 2004). "[T]o state a claim under the CFA, a plaintiff must allege each of three elements: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the Plaintiff's ascertainable loss." New Jersey Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 12-13 (App. Div. 2003). A party who successfully asserts a violation of the CFA can obtain treble damages pursuant to N.J.S.A. § 56:8-19.

Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or

13

practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefore in any court of competent jurisdiction. In any action under this section the Court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest.

In the United States Court of Appeals for the Second Circuit 300 F. 2d 745; 1961 SEC v Capital Gains Research, it mentions fraud and fraud being the keynote and the burden placed upon the party alleging fraud is that it be established by clear and convincing proof, which Plaintiff has certainly provided.

The RICO Act (18 U.S.C. §§ 1961-1968) makes reference to committing multiple violations of certain varieties over a ten year period. The statute is sufficiently broad to encompass illegal activities relating to any enterprise affecting interstate commerce. Bank of America obtained taxpayer dollars through the TARP program. Rather then assist those homeowners they pledged to help with the money they obtained, they committed massive fraud to steal the homes they pledged to save. This fraud mushroomed to many branches of Bank of America throughout the Country. In the case at bar there is a fraudulent signature on a Note, a fraudulent signature and title of a Manager on an indorsement, a fraudulent Assignment of Mortgage and a fraudulent notary signature on that Assignment. Many people contributed to the fraud through either fraudulently signing the documents, producing the documents, using them as Exhibits, or covering up the fraud by doing nothing. The act of "looking the other way and ignoring the fraud" continues today by the attorney(s) for Fannie Mae, Bank of America and Freddie Mac.

This is more than sufficient involvement of various individuals to prove

RICO violations.

## COUNT IX - QUIA TIMET

"*Because he fears*" A legal doctrine that allows a person to seek equitable relief
from future probable harm to a specific right as interest.

"Quia timet is the right to be protected against anticipated future injury that
cannot be prevented by the present action. The doctrine of 'quia timet' permits
equitable relief based on a concern over future probable injury to certain rights or
interests, where anticipated future injury cannot be prevented by a present action
and law, such as where there is a danger that a defense of law, might be prejudiced
or lost if not tried immediately 27A Am. Jur.2d Equity § 93 at 581 (1966).

Based on information and documents I have provided to the Court, inclusive of a
Notarized Affidavit and two Audits, I believe my title is corrupt. I should not be
forced to sell my property to confirm this fact.

The Defendants have not provided any proof to the contrary.

## PLAINTIFF HAS STANDING TO CHALLENGE THE ASSIGNMENT

In Thomas Glaski v Bank of America, National Association et al., F064556
Court of Appeals, of California Fifth Appellate District July 31, 2013, Circuit
addresses quiet title, fraud and assignments that were void. "*We reject the view that
a borrower's challenge to an Assignment must fail once it is determine that the borrower
was not a party to, or third party beneficiary of the Assignment Agreement. Courts
should proceed to the question of whether the Courts should proceed to the question
of whether the Assignment was fraud. The Court ruled that the claims for Quiet Title
Declaratory Relief, Cancellation of Instruments and Unfair Business Practices be*

15

remanded.".

## MERS AND THE PAID OFF 2002 MORTGAGE

In Landmark National Bank v Boyd A. Kesler, Supreme Court of Kansas, August,
2009, the Court ruled that MERS does not take applications, underwrite loans,
make decisions on whether or not to extend credit, collect mortgage payments, hold
escrows for taxes and insurance, or provide any loan servicing functions
whatsoever. MERS merely tracks the ownership of the lien for its servicers through
membership fees charged to its members.

Black's Law Dictionary defines a nominee as "[a] person designated to act for
another as his representative in a rather limited sense.

In Bain v Mortgage Electronic Registration Systems Supreme Court of
Washington, the Court states that MERs is not a "holder" under the plain language
of the Statute.

Although MERS was designed to enhance efficiency in the mortgage assignment
process, Adam Levitin, a Georgetown University Law professor who specializes in,
among many other financial regulatory issues, mortgage finance argued it may not
conform with the law. "Slowly but surely" courts are issuing decisions which "cast
validity on the MERS process." Although ~60% of mortgages list MERS as the
"nominee" which owns the mortgage, more recent court cases have ruled that
MERS has no standing in foreclosure actions either because (1) physical paperwork
must be transferred when a mortgage is assigned by one party to another or (2)
MERS has no true economic interest in the mortgage in question since it collects no
payments from the borrowers.

16

3. A recent conference call Citigroup had with investors/clients featured Adam Levitin, who said the documentation problems involved in the mortgage mess have the potential "to cloud title on not just foreclosed mortgages but on performing mortgages."

3. Real Property, Trust and Estate Law Journal article comments on the illegality of MERS and indicates that may have literally "split the baby" and rendered **millions** of mortgages unsecured.:

Typically, the same person holds both the note and the deed of trust/mortgage.. In the event that the note and the deed of trust/mortgage are split, the note, as a practical matter becomes unsecured.

4. If the growing line of cases asserting that MERS is neither a mortgagee nor a deed of trust/mortgage beneficiary is correct, then courts must soon confront profound questions about the very enforceability of MERS' security agreements. There is a compelling legal argument that loans originated through the MERS system fail to create enforceable liens.

Eloisa Cosajay v Mortgage Electronic Registration Systems, Inc. et al, C.A.No. 10443 M, United States District Court for the District of Rhode Island, November 5, 2013. This case is with regard to MERS and the fact that they do not have standing. The Court denied the Defendant's Motion to dismiss.

In Re: David Bucholz, Case No. 90-35482 United States Bankruptcy Court for The District of New Jersey, 224 B..R. 13; August 1998 which cites Under New Jersey Law, a mortgage instrument first must be duly acknowledged or proved and certified at the time the loan transaction is consummated.. N.J. Stat. Ann §§ 46:14-1

et. Seq. 46:15-2; 46: 16-1.Otherwise the instrument may not be recorded with the relevant county recording office. Likewise, if the acknowledgement is defective, the mortgage may not be recorded or registered in the appropriate county office unless the creditor cures the defect by obtaining and filing an endorsed statement by the mortgagor declaring that the mortgagors received a certified true copy of the instrument and mortgagee or mortgagee's attorney provided mortgagor with a certified true copy of the instrument N.J. Stat. Ann. § 46:15-12.

On November 11, 2013 Plaintiff sent a certified letter to Bank of America N.A. in Charlotte, NC. E mails were also sent to MERS and Bank of America with regard to the original cancelled note for the alleged 2002 mortgage (Exhibit 16).

To date, I have not received a response to any of my inquiries.

## REGISTRY OF DEEDS

Communities around the country have elected and hired county recorders to act as their custodian of property rights. John O'Brien takes this responsibility seriously which is why he is leading the march against the banks in their fraudulent actions. Those recorders who agree the MERS system poses a threat to real property records have an obligation arising from their office to reclaim and restore faith in land title records. While some individual county recorders may reasonably feel reluctant to take on a powerful national system backed by some of the nation's largest financial institutions, this is precisely what they were hired to do.

## IRREGULARITIES ADDRESSED BY N.J. SUPREME COURT

One of the chief "irregularities" addressed by our Supreme Court in the Administrative Actions of the document irregularities, was the fraudulent

18

preparation and execution of documents on behalf of lenders (who purchased mortgage loans or "pools" of mortgage loans from original lenders) such as the Assignments of Mortgage in the case, William Suser Appellant/Plaintiff v Wachovia Mortgage FSB, et al, Docket No. A-1330-12T2, Superior Court of New Jersey Appellate Division, November 4, 2013 by individuals with no legal authority, who were hired solely for the purpose of mass producing and signing such documents, so called robo-signers". Six banks were "implicated" .in this fraudulent activity. The Administrative Order further discussed and cited a New Jersey Chancery Court Case (Bank of America v. Raftogianis 418 N.J. Super, 323 (Ch. Div. 2010), in which the court held that an Appellant attempting to foreclose a mortgage, which had been transferred through a series of securitizations, never obtained actual title to the underlying mortgage.

As further discussed by the Court in the Order, as the robo-signing issue drew National attention, it came to light that documents such as the Assignment of Mortgage at issue in the Suser case, just like in the case at bar, were "executed en masse, in the absence of due diligence, by people with no knowledge of the information contained in the documents and no experience in the financial services or mortgage processing industry".

Garet Giles v Bank of America United States District Court for the Western District of Texas, San Antonio, Plaintiff's claims to quiet title should survive. To prevail in a quiet title plaintiff must show: 1) an interest in a specific property, 2), title to the property is affected by the defendant and 3) the claim, although facially valid, is invalid or unenforceable. By identifying Chester Levings by detailing that he

19

had falsely signed an assignment of a note and mortgage as an employee of MERS, and by specifying when each invalid assignment occurred, Plaintiff adequately specifies the who, what, when, where, and how of the invalid assignment.

If this was a valid transfer, there would be multiple assignments. There was only one, eight years after the closing and that one is fraudulent as evidenced by the notarized Affidavit of John O'Brien and the Report by Securitization Audit International.

## OTHER VIOLATIONS

Under N.J.S.A. 12A:3-23(d) a negotiation of a Note or a negotiation of a Loan cannot occur without the transfer of the entire interest in the Note or transfer of the entire interest in the loan. *"If a transferor purports to transfer less than the entire instrument, negotiation of the instrument does not occur"*.

UCC § 3-308(b) or State Equivalent provides that a person who actually produces the Note is entitled to payment. The Note was never produced.

§ 3-204 (a) or State Equivalent Indorsement. The Indorsement is fraudulent as the Title of the alleged signer is fraudulent. The title of David A. Spector was Senior Managing Director not Managing Director. Curriculum Vitae attached as Exhibit 15. This fraud would make the Indorsement null and void .

For reasons stated above, this Quiet Title, Fraud, Misrepresentation, Fraudulent Conveyance, New Jersey Consumer Fraud Act and Quia Timet actions should not be dismissed.

The note and mortgage have been separated which makes the lien unsecured.

## CLAIMS FOR RELIEF

20

## COUNT I - – QUIET TITLE

To deny the Plaintiff the ability to conduct meaningful discovery

to clear up all doubts and disputes concerning title, would be an error and should

not be allowed.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) appropriate equitable relief;

(b) return of payments made to unknown entities;

© reduction of principal balance to reflect separation of the Note and

Mortgage;

(d) issuance of a quiet title judgment, which provides that the Plaintiff has

legal and good title.

(e) such other relief as the Court deems equitable and just.

## COUNT II - MATERIAL DISPUTES OF FACT

To deny the Plaintiff the ability to obtain the correct amount allegedly owed is

her constitutional right and should not be allowed.

To deny the Plaintiff the ability to conduct meaningful discovery to determine

the source of the fraudulently signed Note is an error and should not be allowed.

Plaintiff should be permitted to determine what entity was paid in full with

The 2003 refinance, with the current alleged loan.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) appropriate equitable relief;

(b) return of payments made to unknown entities;

© reduction of principal balance to reflect separation of the Note and

21

Mortgage;

(d) issuance of a quiet title judgment, which provides that the Plaintiff has

legal and good title.

(e) such other relief as the Court deems equitable and just.

## COUNT III – NAME OF THE OWNER OF THE NOTE AND MORTGAGE IS UNKNOWN

Plaintiff made payments to entities without standing to collect those

payments. Plaintiff requests the return of those monies amounting to approximately

$150,000.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) appropriate equitable relief;

(b) return of payments made to unknown entities;

© reduction of principal balance to reflect separation of the Note and

Mortgage;

(d) issuance of a quiet title judgment, which provides that the Plaintiff has

legal and good title.

(e) such other relief as the Court deems equitable and just.

## COUNT IV - SEPARATION OF THE NOTE AND MORTGAGE

The Note and Mortgage have been separated. This result is the

extinguishment of the lien as the alleged debt is unsecured.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) appropriate equitable relief;

(b) return of payments made to unknown entities;

22

© reduction of principal balance to reflect separation of the Note and

Mortgage;

(d) issuance of a quiet title judgment, which provides that the Plaintiff has

legal and good title.

(e) such other relief as the Court deems equitable and just.

### COUNT V – BREACH OF CONTRACT.

Plaintiff was damaged as a proximate result of Defendants' breach of their

contractual duties.

**WHEREFORE,** Plaintiff respectfully requests the following relief:

a) appropriate damages and equitable relief;

b) return of payments made to an entity without standing to collect them;

© issuance of a quiet title judgment, which provides that the Plaintiff has

legal and good title;

(d) such other relief as the court deems equitable and just.

### COUNT VI –   A. FRAUD and B. MISREPRESENTATION

**WHEREFORE,** Plaintiff respectfully requests the following relief:

(a) appropriate equitable relief;

(b) return of payments made to an entity; without standing to collect them.

(c) reduction of principal balance to reflect payments returned;

(d) issuance of a quiet title judgment, which provides that the Plaintiff has

legal and good title;

(e) such other relief as the Court deems equitable and just.

### COUNT VII – FRAUDULENT CONVEYANCE

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) appropriate equitable relief;

(b) return of payments made to an unknown entity;

© reduction of principal balance to reflect payments returned;

(d) issuance of a quiet title judgment, which provides that the Plaintiff has

Legal and good title;

(e) such other relief as the Court deems equitable and just

## COUNT VIII – NEW JERSEY CONSUMER FRAUD ACT AND THE RICO ACT

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) appropriate equitable relief;

(b) return of payments made to an unknown entity;

© reduction of principal balance to reflect payments returned;

(d) issuance of a quiet title judgment, which provides that the Plaintiff has

legal and good title;

(e) such other relief as the Court deems equitable and just

## COUNT IX – QUIA TIMET

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) appropriate equitable relief;

(b) return of payments made to unknown entities;

© reduction of principal balance to reflect separation of the Note and

Mortgage;

(d) issuance of a quiet title judgment, which provides that the Plaintiff has

legal and good title.

24

(d) such other relief as the Court deems equitable and just.

## CONCLUSION

The present title defect is entirely of their own making as a result of the

failure by the Defendants to comply with the statutes and the directives in their own

securitization documents.

For reasons set forth above, the Complaint should not be dismissed.

## CERTIFICATION

I certify that the information is true and correct to the best of my knowledge.

If anything I have said is not true, I am subject to punishment.

Date December 16, 2013                         Marilynn English, *Pro Se*

# EXHIBIT 1

*Commonwealth of Massachusetts*

**SOUTHERN ESSEX DISTRICT REGISTRY OF DEEDS**
**SHETLAND PARK**
**45 CONGRESS STREET**
**SUITE 4100**
**SALEM, MASSACHUSETTS 01970**

JOHN L. O'BRIEN, JR.
*Register of Deeds*
(978) 542-1704
Fax: (978) 542-1706
e-mail: southernessexcustomerservice@sec.state.ma.us
www.salemdeeds.com

*A division of the Secretary of the Commonwealth*
**WILLIAM FRANCIS GALVIN, SECRETARY**


Marilyn English
97 Pease Ave
Verona, NJ 07044


Dear Marilyn,

In an attempt to provide you with more assistance, I have enclosed, an affidavit signed by me, as Register of the Southern Essex District Registry of Deeds, attesting to the presence of a robo-signed signature on your document as listed on McDonnell Property Analytics Approved Robo-signers List. If you are currently being foreclosed upon, this affidavit may be presented to your attorney, the lender, or the court to show that your chain of title has been corrupted. For those of you who are not in foreclosure, the affidavit may be presented to your current lender to show that a robo-signed document has in fact been recorded in your chain of title and be part of a request to investigate how this happened and what the lender is going to do to correct it.

Thank you for contacting us concerning your robo-signed document. Should you have any further questions or need assistance, please contact my Customer Service Department at 978-542-1704.


With Regards,

John O'Brien
Register of Deeds



# *Commonwealth of Massachusetts*

### SOUTHERN ESSEX DISTRICT REGISTRY OF DEEDS
### SHETLAND PARK
### 45 CONGRESS STREET
### SUITE 4100
### SALEM, MASSACHUSETTS 01970

JOHN L. O'BRIEN, JR.
*Register of Deeds*
(978) 542-1722
Fax: (978) 542-1721
e-mail: jl.obrien@sec.state.ma.us
www.salemdeeds.com

**A division of the Secretary of the Commonwealth**
**WILLIAM FRANCIS GALVIN, SECRETARY**

## AFFIDAVIT OF JOHN L. O'BRIEN, REGISTER OF DEEDS
## SOUTHERN ESSEX DISTRICT

I, John L. O'Brien, Register of the Southern Essex District Registry of Deeds, do hereby swear or aver as follows:

1. As of June 2011 it has been my policy as follows:

    a. IF THERE ARE VARIATIONS OF AN ALLEGED ROBO-SIGNER ON RECORD AT MY REGISTRY – I require that all documents sent for recording that are executed by that alleged robo-signer, be independently verified by an affidavit that the signature is in fact the signature of the named individual, prior to recording. (See Exhibit B attached hereto).
    b. IF THERE ARE NO VARIATIONS OF AN ALLEGED ROBO or SURROGATE SIGNER ON RECORD AT MY REGISTRY – I record the documents and forward them to the Massachusetts Attorney General's Office for review and possible violation of a Crime Against Property, specifically MGL Chapter 266, Section 35A (b) (4).

2. I have instituted this policy based on the opinion of our forensic analyst, Marie McDonnell of McDonnell Property Analytics who has provided me with a list of robo and surrogate signers.

    McDonnell defines a "robo-signer" as: *The person on a legal document processing assembly line whose only task is to sign previously prepared documents affecting title to real property in a robotic-like fashion without reading the documents or verifying the facts contained therein by reviewing primary source evidence. The robo-signer's mission is to expedite the documents' recordation in the public land records or in court proceedings. Additionally, robo-signers regularly fail to establish or simply do not have the authority to execute these documents on behalf of the legal title holder or principal on whose behalf they purport to act.*

    McDonnell defines a "surrogate signer" as: *A person who signs a legal document on behalf of and in the name of another without reading it or understanding the document's contents; surrogate-signers are not authorized to execute these documents on behalf of the legal title holder or principal on whose behalf they purport to act.*

3. I am aware that CHESTER LEVINGS is an alleged robo or surrogate signer.

Signed this 8th day of October 2013, under the pains and penalties of perjury.

_____
John L. O'Brien, Register

## COMMONWEALTH OF MASSACHUSETTS

**Essex,ss.**

On this 8th day of October, 2013, before me, the undersigned notary public, personally appeared John L. O'Brien, who is personally known to be the person whose name signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

_____
Notary Name:
My Commission Expires:       Jan 2, 2015

## Affidavit in Support of Filing

I, _____ ("Declarant"), am a resident of _____,
County of _____, State of _____, and do hereby certify, swear or affirm,
and declare that I am competent to give the following declaration based on my personal knowledge, and
that the following facts and things are true and correct:

1.  I am attorney duly licensed to practice law and in good standing in _____.

2.  I am representing _____ (the "Client").

3.  This Affidavit is in support of the following recording:

4.  The purpose of the underlying filing(s) is/are:

5.  I have personally communicated on or about _[date]_____ with an employee or employees of
    the Client whose names are _____, who (A) personally reviewed the documents being
    submitted for filing, (B) personally reviewed all required supporting documentation of corporate
    and personal authority ("Supporting Documents"), and (C) confirmed the accuracy of all
    documents and authenticity of all signatures, including the notary.

6.  I have received and reviewed all Supporting Documentation.

7.  Based on such communications, review of documents and my own personal inquiry into the
    Client's past and current standards and practices, affirm that underlying filing(s) contain no false
    or questionable statements of fact or law.

8.  Should any of the statements made herein be incorrect and the Recording corrupt or cloud the
    homeowner's chain of title, I will indemnify and hold anyone in the chain thereafter harmless.

    PROPERTY ADDRESS: _____

9.  I am fully aware of and understand M.G.L. c. 266 § 35A.

Signed under pains and penalties of perjury.

WITNESS my signature this _____ day of _____ 20__ .

                                    _____
                                    Signature of Declarant

            STATE or Commonwealth of _____ County _____
    On this ____ day of _____, 20____, before me, the undersigned notary public, personally appeared
_____, and proved to me through satisfactory evidence of identification, which
was _____, to be the person who signed the preceding or attached document in my
presence, and who swore or affirmed to me that the contents of the document are truthful and accurate to the best
of (his) (her) knowledge and belief.

                                    _____
                                    Notary Public:
                                    My commission expires: _
                                    (Official signature and seal of notary)

# EXHIBIT 2

'S
FOR IMMEDIATE RELEASE
...m, MA
st 30, 2011

...act:
O'Brien, Register of Deeds
8-542-1722
obrien@sec.state.ma.us

 n O'Brien, Southern Essex District Register of Deeds in Salem, Massachusetts extends an invitation to banks
nd all attorney generals to visit his registry.

'Brien who has been leading the national effort to hold lenders accountable and was the first in the nation to refuse to
record robo-signed documents, has invited the CEO's of the nation's largest banks including Bank of America, JP
rgan Chase, Wells Fargo along with the 50 states' attorneys general to come to the Salem Registry and view
-rt-hand the damage that these banks and the Mortgage Electronic Registration System (MERS) has caused to
thousands of Essex County homeowners' chains of title.

'It's as if a hurricane came through here," said Register John O'Brien, referring to the financial havoc and damage
done to property records at the Registry of Deeds.

"Following any disaster, the powers-that-be generally visit the scene to assess the damage. That is what I would like
. ese major lenders and the attorneys general to do – a visit to my registry sooner rather than later, may help these
nders to truly appreciate the extent of the damage" O'Brien said.

Brien believes that a sweetheart deal, in the form of a settlement to grant lenders immunity from prosecution, is in
e works. O'Brien stated, "There can be no settlement granting the lenders immunity and at the same time letting
MERS of the hook". "I believe the responsible thing to do would be to see the damage before they talk settlement.
they owe the American people that. If they are truly sincere about cleaning up this mess then they should take me up
n my offer".

he settlement currently in negotiations with the banks is being led by Tom Miller, the Iowa Attorney General who just
'ast week removed New York Attorney General Eric Schneiderman, a vocal critic of the proposed settlement. O'Brien
has expressed his outrage over the ouster and has called for Miller to step aside. O'Brien said "we need more Eric
chneidermans fighting the fight. He is the voice of Main Street not Wall Street". According to O'Brien, any settlement
t this time would be a total sellout of the American property owner and their property rights.

We still do not know the extent of the damage and just how much they have fleeced from taxpayers in lost recording
fees, which in my opinion run into billions of dollars. These CEO's have to step up and take full responsibility for what
they have allowed to happen. They have played fast and loose with people's property rights, and have corrupted the
chains of title to hundreds of thousands of property owners across this country," O'Brien says.

In addition, O'Brien believes that the only way lenders and the attorneys general can fully appreciate the ramifications
of the schemes (including the recording of fraudulent documents, which in some cases were used to take people's
homes illegally; the use of robo-signers; and the failure to record assignments) is to travel to Salem, sit across the table
from him and review the documents. Only then, will they fully understand the extent of the damage that's been caused.

"Hopefully," O'Brien says, "By viewing the thousands of fraudulent documents recorded in my Registry, they will
begin to understand how serious this issue is and work with Registers of Deeds across this country to correct the
wrongs that have been committed."

"All I am looking for is justice for these homeowners. I have said all along, that the banks need to talk to Registers of
Deeds. What better way, than to come to an actual Registry and see first-hand what I am talking about. It would be
the responsible thing for them to do. We would be able to have an open and frank discussion which hopefully would
lead to a solution. The last thing the American people need now is to have this issue swept under the rug and settled
for pennies on the dollar," O'Brien said.

# Fraud in Foreclosure Docs

By: David Dayen Thursday June 30, 2011 2:58 pm

1 point    Like    73
Tweet    57

Longtime readers know I've been covering the registers of deeds, county officials who wield some degree of power in the case of foreclosure fraud, because they hold in their offices a good deal of physical evidence about mortgage assignments and associated documents. Jeff Thigpen, the register of deeds for Guilford County, North Carolina, did a preliminary investigation of a set of documents in his office and found widespread fraud, particularly from forged documents. Thigpen's key partner, John O'Brien, a register in Southern Essex County, Massachusetts, has been fighting this fight as well. He vowed not to record any documents he suspected of fraud, which would slow some foreclosures. He demanded that MERS pay millions of dollars in back recording fees which were not paid when banks tracked their own mortgage transfers on a database. But O'Brien hadn't done the work of auditing his office. Until this week, at a convention for county registers.

> At the Annual Conference of The International Association of Clerks, Recorders, Election Officials and Treasurers (IACREOT), Register John O'Brien revealed the results of an independent audit of his registry. The audit, which is released as a legal affidavit was performed by McDonnell Property Analytics, examined assignments of mortgage recorded in the Essex Southern District Registry of Deeds issued to and from JPMorgan Chase Bank, Wells Fargo Bank, and Bank of America during 2010. In total, 565 assignments related to 473 unique mortgages were analyzed.
>
> McDonnell's Report includes the following key findings:
> • Only 16% of assignments of mortgage are valid
> • 75% of assignments of mortgage are invalid.
> • 9% of assignments of mortgage are questionable
> • 27% of the invalid assignments are fraudulent, 35% are "robo-signed" and 10% violate the Massachusetts Mortgage Fraud Statute.
> • The identity of financial institutions that are current owners of the mortgages could only be determined for 287 out of 473 (60%)
> • There are 683 missing assignments for the 287 traced mortgages, representing approximately $180,000 in lost recording fees per 1,000 mortgages whose current ownership can be traced.
>
> McDonnell told O'Brien... "What this means is that the degradation in standards of commerce by which the banks originated, sold and securitized these mortgages are so fatally flawed that the institutions, including many pension funds, that purchased these mortgages don't actually own them because the assignments of mortgage were never prepared, executed and delivered to them in the normal course of business at the time of the transaction. In a blatant attempt to engineer a 'fix' to the problem, the banks set up in-house document execution teams, or outsourced the preparation of their assignments to third parties who manufactured them out of thin air without researching who really owns the mortgage."

This is why, and I'll get into this in a future post, the Bank of America settlement with investors, which appears to indemnify the bank and facilitate a conspiracy of silence between banks and investors on these securitization issues, is a really raw deal. It "solves" one problem, BofA's exposure to the investors in its mortgage backed securities. But it in no way solves the much larger problem, namely who actually owns these mortgages. An independent auditor, after

# EXHIBIT 3

This space for Recorder's use

DocID#  9352604538923985

Property Address:
97 Pease Ave
Verona, NJ 07044-1208
NJ0-AM 13990543          5/27/2011

Recording Requested By:
Bank of America
Prepared By:
Srbui Muradyan
888-603-9011
450 E. Boundary St.
Chapin, SC 29036

When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

MIN #: 1000157-0001388532-8          MERS Phone #: 888-679-6377

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is 3300 S.W. 34TH AVENUE, SUITE 101 OCALA, FL 34474 does hereby grant, sell, assign, transfer and convey unto BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP whose address is 13150 WORLD GATE DR, HERNDON VA 20170 all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Original Lender:        AMERICA'S WHOLESALE LENDER
Borrower(s):            MARILYNN ENGLISH, AN UNMARRIED WOMAN
Date of Mortgage:       3/21/2003
Original Loan Amount:   $315,750.00

Recorded in Essex County, NJ on: 4/2/2003, book 8791, page 537 and instrument number 752837

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
5/27/11

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____

Chester Levings, Assistant Secretary

State of California
County of Ventura

On May 27, 2011 before me, Evette Ohanian, Notary Public, personally appeared Chester Levings, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person (s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: Evette Ohanian          (Seal)
My Commission Expires: 12/27/2011

EVETTE OHANIAN
COMM. #1787925
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Dec. 27, 2011

Inst# 11041700 BK# 12314 PG# 867

# EXHIBIT 4



**People First**
**SAIAudit.com**

---

# America Wholesale Lender / Chester Levings / MERS

Mortgage #026045389
MERS/MIN 100015700013885328

Marilynn English
97 Pease Ave.
Verona NJ
07044-1206
Prepared August 28, 2013

---

This report provides important information to reinforce serious complaints regarding America Wholesale Lender's handling of the above referenced mortgage. Additional supporting documentation that will be provided upon request.

**Securitization Audit International**
Ellen Russell

Securitization Auditor

# Chester Levings /

### Falsely Claimed Position of Authority

Chester Levings, at the time he affixed his signature to the ASSIGNMENT (see below),  was employed by Bank of America. He was not, and never was an officer of Mortgage Electronic Registration Systems Inc., as per the deposition of MERS Secretary-Treasurer William Hultman .

### Accessory to Fraud - Notary

Notary Public Evette Ohanian was in fact a "robo-signer" in this instance who worked in concert with fellow "robo-signer" Chester Levings, falsely attesting to the validity of Levings's signature as Assistant Secretary of Mortgage Electronic Registration Systems Inc.

Ms. Ohanian is in violation of Title 18 USC § 4 - MISPRISION OF FELONY

*"Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both."*

There is an obvious difference
between the purported "Chester
Levings" signature that appears on
Mr. Triantopoulos' document of
11/10/11 (at right), and the samples
that follow. In addition to this the
signature on Ms. English
assignment is different also.

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE BANK, FSB**

By: _____

___Chester Levings Assistant Secretary___

## SAMPLES

...F, the undersigned has caused this Assignment of Deed of Trust to be executed on

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

By: _____
Chester Levings, Assistant Secretary

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

By: _____

**Chester Levings, Assistant Secretary**

before me, **Evette Ohanian,** N...
of satisfactory evidence to be
...dged to me that he/she/they ex...
...gnature(s) on the instrument...
...trument.

...Y OF PERJURY under the...
...orrect.

...official seal.

_ian_
tnian
.. 12/27/2011

My Comm. Expires Dec. 27, 2011

**Filed and Recorded**
**Official Public Rec**...ction 655.1. The Code. 1973. by separate instrument only. Satisfaction by
**John F. Warren, C**...3.147; Release for Deceased Mortgagee. Section 633.95)
**Dallas County, TE**...
**06/29/2011 04:56:5**...          Countrywide Home Loans, Inc. (fka Countrywide Funding
**$16.00**                        Corporation)
**201100168219**

_____
Chester Levings
Assistant Secretary

_____
Paul Heller
Assistant Secretary

...ty, as:
...la, Notary Public, personally appeared Chester Levings and Paul Heller,
...o me on the basis of satisfactory evidence) to be the persons whose names
...d acknowledged to me that they executed the same in their authorized
...the instrument the persons, or the entities upon behalf of which the persons

# Garet Giles v. Bank of America

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION - March 27, 2012

GARET GILES,
PLAINTIFF,
v.
BANK OF AMERICA, N.A.,
DEFENDANT.

> *The opinion of the court was delivered by: Nancy Stein Nowak United States*
> *Magistrate Judge*

REPORT AND RECOMMENDATION TO: Honorable Orlando Garcia United States
District Judge

Pending before the Court is Defendant Bank of America, N.A.'s Motion to Dismiss
Plaintiff Garet Giles's Third Amended Complaint. After considering the motion, I
recommend granting the motion in part and denying in part.

## BACKGROUND

... Plaintiff alleges that the assignment of note and deed of trust with respect to
each property was invalid and fraudulent. According to Plaintiff, on July 29, 2011,
one Chester Levings signed the assignment related to the Bennington Way property
as an assistant secretary of MERS; upon Plaintiff's "information and belief,"
however, Levings was not actually an employee of MERS, but was rather an
employee of Defendant or one of its servicers.*fn9

## RECOMMENDATION

... Fourth, Plaintiff's claim to quiet title should survive Defendant's motion to
dismiss. To prevail in a suit to quiet title action, a plaintiff must show "(1) an
interest in a specific property, (2) title to the property is affected by a claim by the
defendant, and (3) the claim, although facially valid, is invalid or
unenforceable." .... By identifying Chester Levings and Raymond Marquis, by
detailing that each had falsely signed an assignment of a note and deed of trust as
an employee of MERS, and by specifying when each invalid assignment occurred,
Plaintiff adequately specifies the who, what, when, where, and how of the invalid
assignment.*fn21"

Based on the foregoing, I recommend granting in part and denying in part
Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint (docket entry #
28). Specifically, I recommend dismissing Plaintiff's claims for (i) fraud, (ii)
violations of the TDCA and DTPA, and (iii) defamation. I recommend denying the
request to dismiss Plaintiff's claim to quiet title.

# Bank of America, N.A. v. Ogleshill Farm, LLC et al

Share | Tweet
Like  0  Send

| | |
|---|---|
| **Plaintiff:** | Bank of America, N.A. |
| **Defendants:** | Ogleshill Farm, LLC , Charles R. Ogle, Melanie A. Ogle and Diane Sargent |
| **Counter_claimants:** | Charles R. Ogle and Melanie A. Ogle |
| **Counter_defendant:** | Bank of America, N.A. |
| **Thirdparty_defendants:** | Melanie A. Ogle, Bank of America Corporation , America's Wholesale Lender , Countrywide Home Loans, Inc , Sandra Williams , Sophie L. Cummings , Diana DeAvilia , Chester Levings , Evette Ohanian , Mortgage Electronic Registartion Systems, Inc , Carlisle, McNellie, Rini, Kramer and Ulrich Co LPA , MERSCORP, Inc. , CoreLogic Document Solutions and Federal National Mortgage Association |
| **Thirdparty_plaintiffs:** | Charles R. Ogle and Melanie A Chester,Levings has appeared as defendent in several BoA lawsuits due to his robo-signing. |
| **Case Number:** | 2:2011cv00745 |
| **Filed:** | August 17, 2011 |
| **Court:** | Ohio Southern District Court |
| **Office:** | Columbus Office |
| **County:** | HOCKING |
| **Presiding Judge:** | George C Smith |
| **Referring Judge:** | Terence P Kemp |
| **Nature of Suit:** | Real Property - Foreclosure |
| **Cause:** | 28:1444 Petition for Removal- Foreclosure |
| **Jurisdiction:** | Federal Question |
| **Jury Demanded By:** | Defendant |

## Huml-v-Fannie-MERS_order_4-12.pdf (page 3 of 4)

all present foreclosure activity on the part of the defendants "cease" and be maintained "status quo" until their claims in this cause are disposed of with finality;

3.     An award of $15,000.00 in interim attorney fees payable by defendants MERSCORP, Inc., Mortgage Electronic Registration Systems, Inc., and/or Fannie Mae to Richard A. Roman, Esq., 505 East Rio Grande, El Paso, Texas 79902 on or before April 25, 2012.

**IT IS HEREBY FURTHER ORDERED:**

4.     That this matter is set for a hearing, more specifically a continuation of the Temporary Injunction hearing, on April 25, 2012 @ 1:30 p.m. All counsel should be present (Exhibit "E");

5.     At that time the court will hear testimony regarding the injunctive relief sought to abate all foreclosure filings by these named defendants including any instruments/ documents in the deed records of El Paso County, Texas (and others) identifying MERS or any other person or entity as a "mortgagee" or "beneficiary" of any mortgage in which such person or entity does not have a beneficial interest or other legally sufficient interest;

6.     At the hearing the defendants shall produce the following individuals by and through the entities for which they execute foreclosure/mortgage-related documents:

(1) Beverly Mitrisin

(2) Chester Levings
(3) Oscar Rodriguez

The bond amount set to perfect this order is set at $100.00 or

SO ORDERED, SIGNED and ENTERED this ____19____ day of _____
2012.

Honorable Judge Rangel Presiding

# EXHIBIT 5

We evaluate collateral quality through the use of appraisals, property inspections and/or automated valuation model.

Underwriting guidelines facilitate the uniform application of underwriting standards to all borrowers regardless of race, religion or ethnic background. Uniformity in underwriting also provides a means for measuring and managing credit risk.

Our conventional conforming underwriting guidelines are based on the guidelines accepted by Fannie Mae and Freddie Mac. Our underwriting guidelines for FHA-insured and VA-guaranteed mortgage loans comply with guidelines established by the U.S. Department of Housing and Urban Development or the Veterans Administration. Our underwriting guidelines for non-conforming mortgage loans, Prime Home Equity Loans, and Nonprime Mortgage Loans have been designed so that these loans are salable in the secondary mortgage market. We developed these guidelines to meet the requirements of private investors, rating agencies and third-party credit enhancement providers.

These standards and procedures encompass underwriter qualifications and authority levels, appraisal review requirements, fraud controls, funds disbursement controls, training of our employees and ongoing review of their work. We help to ensure that our origination standards are met by employing accomplished and seasoned management, underwriters and processors and through the extensive use of technology. We also employ proprietary underwriting systems in our loan origination process that improve the consistency of underwriting standards, assess collateral adequacy and help to prevent fraud, while at the same time increasing productivity.

We supplement our loan origination standards and procedures with a post-funding quality control process. Our Quality Control Department is responsible for completing loan audits that may consist of a re-verification of loan documentation, an underwriting and appraisal review, and, if necessary, a fraud investigation. We also employ a pre-and post-funding proprietary loan performance evaluation system. This system helps to identify fraud and poor performance of individuals and business entities associated with the origination of our loans. The combination of this system and our audit results allows us to evaluate and measure adherence to prescribed underwriting guidelines and compliance with laws and regulations.

### Sale of Loans

Nearly all of the mortgage loans that we originate or purchase in our Mortgage Banking and Capital Markets Segments are sold into the secondary mortgage market primarily in the form of securities, and to a lesser extent as whole loans. In connection with such sales, we have liability under the representations and warranties we make to purchasers and insurers of the loans. In the event of a breach of such representations and warranties, we may be required to either repurchase the mortgage loans with the identified defects or indemnify the investor or insurer. In such cases, we bear any subsequent credit loss on the mortgage loans. Our representations and warranties are generally not subject to stated limits. However, our contractual liability arises only when the representations and warranties are breached. We attempt to limit our risk of incurring these losses by structuring our operations to ensure consistent production of quality mortgages and servicing those mortgages at levels that meet or exceed secondary mortgage market standards. We make significant investments in personnel and technology to ensure the quality of our mortgage loan production. The liability for this recourse resulting from a breach of our representations and warranties totaled $390.2 million and $187.5 million at December 31, 2006 and 2005, respectively. The increase in this liability is due mainly to the addition of the liabilities related to securitizations in the current period together with an increase in loan sales, which generally have more extensive representations and warranties than securitizations. The expense of $290.4 million, $66.5 million and $85.4 million for 2006, 2005 and 2004, respectively, associated with the liability for representations and warranties was recorded as a component of gain on sale of loans in the consolidated income statement.

101

# EXHIBIT 6

| SETTLEMENT STATEMENT | | U.S. DEPARTMENT OF HOUSING | File Number: 230609 |
| --- | --- | --- | --- |
| Optional Form for | | AND URBAN DEVELOPMENT | Loan Number: 026045389 |
| Transactions without Sellers | | OMB Approval No. 2502-0491 | Mtg. Ins. Case Number: |

| NAME OF BORROWER: | Marilynn English |
| --- | --- |
| ADDRESS: | 97 Pease Avenue, Verona, NJ 07044-1206 |
| NAME OF LENDER: | America's Wholesale Lender |
| ADDRESS: | 1800 Tapo Canyon Road, Simi Valley, CA 93063-6712 |
| PROPERTY ADDRESS: | 97 Pease Avenue, Verona, NJ 07044 |
| | Block 111 Lot 2, County of Essex, Borough of Verona |
| ☐ Principal Residence. | ☐ Other Real Estate |
| SETTLEMENT AGENT: | Glen Eagle Title Agency, Inc., Phone 973-808-2277 Fax 973-808-5008 |
| PLACE OF SETTLEMENT: | 363 Route 46 West, Fairfield, NJ 07004 |
| Loan Number: 026045389 | SETTLEMENT DATE: 03/21/2003    DISBURSEMENT DATE: 03/26/2003 |

| L. Settlement Charges | | | M. Disbursement to Others | |
| --- | --- | --- | --- | --- |
| 800. Items Payable in Connection with Loan. | | | 1501. Payoff:20249589-9 | 188,696.97 |
| 801. Loan Origination Fee 0.000% to | | | to Countrywide Home Loans Servicing LP. | |
| 802. Loan Discount 0.125% to America's Wholesale Lender | | 394.69 | 1502. Payoff:1665902 | 121,741.00 |
| 803. Appraisal Fee | | | to Countrywide Home Loans Servicing LP. | |
| 804. Credit Report | | | 1503. | |
| 805. Flood Check to Landsafe Flood | | 25.00 | | |
| 806. Tax Service Fee to Countrywide Tax Service | | 73.00 | 1504. | |
| 807. Commitment Fee to America's Wholesale Lender | | 495.00 | | |
| 808. | | | 1505. | |
| 809. | | | | |
| 810. | | | 1506. | |
| 811. | | | | |
| 900. Items Required by Lender to be Paid in Advance | | | 1507. | |
| 901. Interest From 03/26/2003 to 04/01/2003 @$43.2400 per day | | 259.50 | | |
| 902. Mortgage Insurance Premium for to | | | 1508. | |
| 903. Hazard Insurance Premium for to | | | 1509. | |
| 904. 1st qtr. taxes to Verona Township       P.O.C.1,906.00 | | | 1510. | |
| 1000. Reserves Deposited with Lender | | | 1511. | |
| 1001. Hazard Insurance mo. @$ per month | | | | |
| 1002. Mortgage Insurance mo. @$ per month | | | 1512. | |
| 1003. City Property Taxes mo. @$ per month | | | | |
| 1004. County Property Taxes mo. @$ per month | | | 1513. | |
| 1005. Flood Insurance mo. @$ per month | | | | |
| 1006. mo. @$ per month | | | 1514. | |
| 1007. mo. @$ per month | | | | |
| 1008. mo. @$ per month | | | | |
| 1009. Aggregate Analysis Adjustment | | 0.00 | 1515. | |
| 1100. Title Charges | | | | |
| 1101. Settlement or closing fee to Glen Eagle Title Agency, Inc. | | 300.00 | 1516. | |
| 1102. Abstract or title search | | | | |
| 1103. Title examination | | | 1517. | |
| 1104. Title insurance binder | | | | |
| 1105. Document Preparation | | | 1518. | |
| 1106. Notary Fees | | | | |
| 1107. Attorney's fees | | | 1519. | |
| (includes above items No. ) | | | | |
| 1108. Title Insurance to Glen Eagle Title Agency, Inc. | | 1,146.00 | 1520. TOTAL DISBURSED | 310,437.97 |
| (includes above items No. 1102, 1103, 1104, 1106, 1108, 1109) | | | (enter on line 1603) | |
| 1109. Lender's coverage $ 316,760.00 - 736.00 | | | | |
| 1110. Owner's coverage $ - | | | | |
| 1111. | | | | |
| 1112. | | | | |
| 1113. | | | | |
| 1200. Government Recording and Transfer Charges | | | N. NET SETTLEMENT | |
| 1201. Recording Fees Deed: $; Mortgage $120.00; Release $ | | 120.00 | | |
| 1202. Realty Transfer Fee Deed $; Mortgage $ | | | 1600. Loan Amount | 315,750.00 |
| 1203. State Tax/stamps Deed $; Mortgage $ | | | | |
| 1204. Notice of Settlement to County Clerk | | 20.00 | 1601. PLUS Cash/Check from Borrower | 0.00 |
| 1205. Record 2nd Mortgage to Glen Eagle Title Agency, Inc. | | 75.00 | | |
| 1300. Additional Settlement Charges | | | 1602. MINUS Total Settlement Charges | 1,963.19 |
| 1301. Survey | | | (line 1400) | |
| 1302. Pest Inspection | | | | |
| 1303. Overnight Del 1st & 2nd (x 5) to Federal Express | | 55.00 | 1603. MINUS Total Disbursements to Others | 310,437.97 |
| 1304. Glen Eagle CREDIT to Borrower ($1,000.00 POC) | | 1,000.00- | (line 1520) | |
| 1305. | | | | |
| 1306. | | | 1604. EQUALS Disbursements to Borrower | 3,348.84 |
| 1307. | | | (after expiration of any applicable | |
| 1308. | | | rescission period required by law) | |
| 1400. Total Settlement Charges (enter on line 1602) | | 1,963.19 | | |

The undersigned hereby acknowledges receipt of a completed copy of this statement. To the best of my knowledge the HUD-1A ref. RESPA Settlement Statement is a
true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

Marilynn English          3-21-2003

Glen Eagle Title Agency, Inc.     3/21/03

# EXHIBIT 7

**DISCHARGE**
**OR**
**MORTGAGE**

Prepared By:
Michael Nolan

DOCID#00020249669200SN

A certain Mortgage dated 07/24/2002, was made by

MARILYNN ENGLISH

to Mortgage Electronic Registration Systems, Inc.

This Mortgage was made to secure payment of $192,500.00 and interest. It was recorded or registered in the office of the county recording officer of ESSEX County, New Jersey, on 08/02/2002 in mortgage book 8377 on page 344. #L6377 10

This Mortgage has been PAID IN FULL or otherwise SATISFIED and DISCHARGED. It may now be discharged of records. This means that this Mortgage is now canceled and void.

I sign and CERTIFY to this Discharge of Mortgage on 04/21/2003.

Mortgage Electronic Registration Systems, Inc.

Ronn A. Pisapia
Senior Vice President

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

On 04/21/2003, before me, Angie M. Boswell, Notary Public, personally appeared Ronn A. Pisapia personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

Angie M. Boswell, Notary Public
My commission expires: 01/07/2004

ANGIE M. BOSWELL
COMM. #1248601
NOTARY PUBLIC-CALIFORNIA
VENTURA COUNTY
My Comm. Expires JAN. 7, 2004

Inst# 830086                    Carole A. Graves
Recorded/Filed   MC   S        Essex County Register   MC
08/20/2003  15:07:1 Bk 333  Pg 113 #Pgs 1

Mail Recorded Satisfaction To:          Prepared By:
MARILYNN ENGLISH                        CTC Real Estate Services
97 PEASE AVE                            1800 Tapo Canyon Road
VERONA, NJ 07041                        MSN SV2-88
                                        Simi Valley, CA 93063
                                        (800) 540-4007

Inst# 830086 BK# 333 PG# 113

# EXHIBIT 8

THIS IS TO CERTIFY THAT THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL DOCUMENT EXECUTED IN CONNECTION WITH THIS TRANSACTION AND SENT FOR RECORDATION.

NVR MORTGAGE FINANCE, INC.

BY _____

Return To:
NVR Mortgage Finance, Inc.
121 Hillpointe Dr.
Suite 100
Canonsburg, PA   15317

Tax Map Reference #:

RPC/Parcel ID #:
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-000

Prepared by:
Javier Alarcon
5885 Trinity Parkway, Suite 180
Centreville, VA   20120

_____ [Space Above This Line For Recording Data] _____

Commonwealth of Virginia

# DEED OF TRUST

| FHA Case No. |
| --- |
| 548-4552068-734 |

MIN 100027608102908602

THIS DEED OF TRUST ("Security Instrument") is made on January 06, 2009
The Grantor is Agnes G KELLY

("Borrower"). The trustee is WILLIAM J. INMAN
, a resident of the Commonwealth of Virginia, whose full residence or business address is 11700 Plaza America Dr #500, Reston, VA   20190
, and
DWIGHT C. SCHAR
a resident of the Commonwealth of Virginia, whose full residence or business address is 11700 Plaza America Dr #500, Reston, VA —20190
_____ _____ _____trustees (any one of whom may act and who are referred to as ("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. NVR MORTGAGE FINANCE, INC.

("Lender") is organized and existing under the laws of The State of Virginia
, and

810290860

FHA Virginia Deed of Trust with MERS - 4/96
Wolters Kluwer Financial Services
VMP ®-4N(VA) (0801).01          Amended 7/95

Page 1 of 8          Initials:

810290860

# CONDOMINIUM RIDER

| FHA Case No. |
| 548-4552068-734 |

THIS CONDOMINIUM RIDER is made this 6th     day of January, 2009          ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned
("Borrower") to secure Borrower's Note ("Note") to NVR Mortgage Finance, Inc.

("Lender") of the same date and covering the Property described in the Security Instrument
and located at: 25384 Patriot Terrace
Aldie, VA   20105

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements
of, a condominium project known as: The Condominiums At Kirkpatrick Farms

[Name of Condominium Project]

("Condominium Project"). If the owners association or other entity which acts for the
Condominium Project ("Owners Association") holds title to property for the benefit or use of
its members or shareholders, the Property also includes Borrower's interest in the Owners
Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A.  So long as the Owners Association maintains, with a generally accepted insurance
    carrier, a "master" or "blanket" policy insuring all property subject to the
    condominium documents, including all improvements now existing or hereafter
    erected on the Property, and such policy is satisfactory to Lender and provides
    insurance coverage in the amounts, for the periods, and against the hazards Lender
    requires, including fire and other hazards included within the term "extended

810290860                                                        810290860
FHA Multistate Condominium Rider - 10/95
Wolters Kluwer Financial Services
VMP®-586U (0402).01
Page 1 of 3        Initials:

RECORDER - KANE COUNTY, ILLINOIS

## PLAT ACT AFFIDAVIT - METES AND BOUNDS DESCRIPTION

STATE OF ILLINOIS

} SS.

COUNTY OF KANE

Wendy Kullas , being duly sworn on oath, states that

She resides at St. Charles, IL .

And further states that: (please check the appropriate box)

A. [ ] That the attached deed is not in violation of 765 ILCS 205/1 (a), in that the sale or exchange is of an entire tract of land not being a part of a larger tract of land; or

B. [X] That the attached deed is not in violation of 765 ILCS 205/1 (b) for one of the following reasons: (please circle the appropriate number)

Please circle the number of the paragraph which is applicable to attached deed.

1.  The division or subdivision of land is into parcels or tracts of five acres or more of size which does not involve any new streets or easements of access;

2.  The division of lots or blocks of less than one acre in any recorded subdivision which does not involve any new streets or easements of access;

3.  The sale or exchange of parcels of land between owners of adjoining and contiguous land;

4.  The conveyance of parcels of land or interests therein for use as right of way for railroads or other public utility facilities and other pipe lines which does not involve any new streets or easements of access;

5.  The conveyance of land owned by a railroad or other public utility which does not involve any new streets or easements of access;

6.  The conveyance of land for highway or other public purposes or grants or conveyances relating to the dedication of land for public use or instruments relating to the vacation of land impressed with a public use;

7.  Conveyances made to correct descriptions in prior conveyances;

8.  The sale or exchange of parcels or tracts of land following the division into no more than two parts of a particular parcel or tract of land existing on July 17, 1959, and not involving any new streets or easements of access;

9.  The sale is of a single lot of less than five acres from a larger tract when a survey is made by an Illinois Registered Land Surveyor; provided this exemption shall not apply to the sale of any subsequent lots from the same larger tract of land, as determined by the dimensions and configuration of the larger tract on October 1, 1973, and provided also that his exemption does not invalidate any local requirements applicable to the subdivision of land.

Affiant further states that _she_ makes this affidavit for the purpose of inducing the Recorder of Deeds of Kane County, Illinois, to accept the attached deed for recording, and that all local requirements applicable to the subdivision of land are met by the attached deed and the tract described therein.

Wendy Kullas

Signature of Affiant

SUBSCRIBED AND SWORN TO BEFORE ME

this _30th_ day of _April_ , _2010_.

Signature of Notary Public

"OFFICIAL SEAL"
NOTARY PUBLIC STATE OF ILLINOIS
NORMA P DOMINGUEZ
COMMISSION EXPIRES 10/10/10

KAPLATAF

4

# EXHIBIT 9

**Bank of America**

Home Loans

400 National Way
Mailstop CA6-919-02-22
Simi Valley, CA 93065

November 19, 2012

Marilynn English
97 Pease Avenue
Township of Verona, NJ 07044

Re: Property Address: 97 Pease Avenue, Township of Verona, NJ 07044
    Loan Number Ending in: 5389

Dear Ms. English:

We are in receipt of your correspondence dated November 3, 2012, which was received on November 8, 2012, by Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP, regarding the referenced loan.

You requested information regarding the Owner of the Note for this loan, which is as follows:

Federal National Mortgage Association
3900 Wisconsin Avenue, NW
Washington, DC 20016-2892
1.800.732.6643

The concerns addressed in your correspondence require further detailed analysis. We will respond to your request after we have completed our investigation.

If you have any questions in the interim, please contact Christina Argo at: 1.805.578.4974 extension 84974

Sincerely,

*Cindy Repreza*

Cindy Repreza
Litigation Specialist II
Qualified Written Request

Phone:    215-569-5572

Fax:      215-832-5572

Email:    MMcguigan@blankrome.com

January 10, 2012

Marilynn English
97 Pease Avenue
Verona, NJ 07044

Re:    Borrower(s): Marilynn English (the "Borrower")
       Property Address: 97 Pease Avenue, Township of Verona, NJ 07044
       Loan Number(s) ending in: 5389 (the "Loan")

Dear Ms. English:

This firm represents Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP ("Bank of America"), for the sole purpose of responding to your correspondence dated December 9, 2011 (the "Letter"). In the Letter you request information regarding the Loan. Although couched as a "qualified written request," the information requested in the Letter goes well beyond that which is available through a qualified written request made under 12 U.S.C. §2605 ("QWR").

As you may be aware, a QWR is a written correspondence which includes a statement of specific reasons why the borrower believes that its account is in error and which provides sufficient detail to allow the servicer of the loan to review the borrower's account to determine whether there were errors made in connection with the account, and to either make appropriate corrections where errors were made or explain to the borrower why the servicer believes the account is accurate. A QWR is not a vehicle for a borrower to obtain confidential information concerning the lender's business practices, trade secrets or other proprietary information, nor can it be used to support a fishing expedition for documents that may support a claim or as a mechanism for seeking any other information which does not relate specifically to the borrower's loan. The Letter seeks information which goes well beyond that which is available through a QWR, while failing to provide any of the necessary detail regarding any specific error(s) made by the servicer in connection with the Loan.

Although the Letter is overly broad, unduly burdensome and not in conformity with 12 U.S.C. §2605, we reviewed Bank of America's file documents in an attempt to obtain information responsive to those of your inquiries which were consistent with 12 U.S.C. §2605. We will address those of your inquiries which require a response as follows:

1.     The current interest rate is 5.000%.

January 10, 2012
Page 2

2.   The current owner of the note is Fannie Mae, whose address is 13150 World Gate Drive, Herndon, VA 20170.

3.   See response to paragraph 2 above for information concerning the current owner of the note. The remainder of this request is respectfully declined, as it seeks documentation and/or information beyond that which is available through a "qualified written request" made under 12 U.S.C. §2605.

4.   This request is respectfully declined, as it seeks documentation and/or information beyond that which is available through a "qualified written request" made under 12 U.S.C. §2605.

5.   Bank of America has serviced the Loan since January 1, 2009.

6.   The previous servicer of the Loan was Countrywide Home Loans Servicing, LP.

7.   Enclosed is a Payment History that lists the transactions relating to this Loan during Bank of America's servicing. Please note this history provides pertinent information on payments received, tax and insurance payments disbursed, funds in the suspense/unapplied funds balance, and late charges assessed and paid. There are no codes used in the Payment History that require specific definitions. To date, the fees that have been charged against the account that are not reflected in the Payment History are as follows: inspection fees of $162.00; return payment fees of $20.00; and BPO fees of $190.00.

8.   See the enclosed Payment History.

9.   The arrears for the Loan are as follows: total outstanding monthly interest payments, $29,024.24; total outstanding monthly principal payments, $40,889.80; and total outstanding fees of $372.00.

10.   See the enclosed Payment History.

11.   See the enclosed Payment History and response to paragraph 7 above.

12.   The current monthly escrow payment of $851.37 is comprises of the following: a county tax payment of $449.40; a hazard insurance payment of $142.44; a shortage payment of $86.74; and a reserve requirement of $172.79.

13.   See the enclosed Payment History.

14.   See the enclosed Payment History and response to paragraph 7 above. Per the terms and conditions of the aforementioned documents, forced placed insurance, also known as lender secured insurance, can be secured by the lender if notification is received via

# EXHIBIT 10

June 18, 2012

Marilynn English
97 Pease Avenue
Verona, New Jersey 07044

For Property Address
97 Pease Avenue
Verona, New Jersey 07044

Mortgage Loan Number 26045389

Sent via Certified Mail Nos. 7011 0110 0000 8470 4819,
7011 2970 0000 3012 0821, 7011 2970 0000 3012 0838,
And 7011 2970 0000 3012 0845

## NOTICE OF DEFAULT

**BANK(S:)** Fannie Mae, Freddie Mac     **HOMEOWNER:** Marilynn M. English
and/or Bank of America N.A.

This is a notice that the Bank of America N.A. (BOA) and/or Federal National Mortgage
Association (Fannie Mae(FNMA)) and/or Federal Home Loan Mortgage Corporation
Association (Freddie Mac/FHLMC) have defaulted on their claim on the above Mortgage
in full accordance with the Administrative Procedures Act of 1946 for the property
described as:

   Legal Description: Essex County  Registry of Deed Book 8701 Page 537

BOA and/or Fannie Mae and/or Freddie Mac were given more than 30 days to present to
the Homeowner proof of claim to the Homeowner's Verification of Proof of Claim.
BOA and/or Fannie Mae and/or Freddie Mac were unable to produce proof of claim,
therefore, BOA and/or Fannie Mae and/or Freddie Mac cannot be a party to enforce the
security instrument pursuant to U.C.C ARTICLE 3-.§3-301, the Real Estate Settlement
Procedures Act (RESPA) and all applicable state and federal law.

Pursuant to U.C.C. – ARTICLE 3-§3-302, Homeowner is entitled to verify through visual
inspection "THE ORIGNAL WET INK SIGNATURE PROMISSORY NOTE" upon
demand. A photocopy of the instrument does not constitute proof of claim.

Pursuant to U.C.C. – ARTICLE 3-§3-302, BOA and/or Fannie Mae and/or Freddie Mac were requested to provide proof that they are the Note Holder of Due Course and a Real Party in Interest. A photocopy of the instrument is not sufficient proof of holder in Due Course, valid chain of assignment, or that BOA and/or Fannie Mae and/or Freddie Mac are a real party in interest.

BOA and/or Fannie Mae and/or Freddie Mac were asked specifically to clarify via affidavit or bank assay stipulating whether or not they are a creditor following Generally Accepted Accounting principles (GAAP), whereby true double entry book accounting was performed in issuing the loan showing a debit against the Bank's assets as a result of the alleged loan. BOA and/or Fannie Mae and/or Freddie Mac failed to provide GAAP accounting as required. BOA and/or Fannie Mae and/or Freddie Mac have agreed that the balance on said account is $0.00.

BOA and/or Fannie Mae and/or Freddie Mac were informed that failure to provide proof as requested will result in an administrative default.

As of this date, BOA and/or Fannie Mae and/or Freddie Mac have not answered the Homeowner's written request point by point as required by law.

Owner on title hereby declares that the mortgage of BOA and/or Fannie Mae and/or Freddie Mac is null and void.

BOA and/or Fannie Mae and/or Freddie Mac are hereby notified that they are in default and can no longer lay claims on this property or the Homeowner.

BOA and/or Fannie Mae and/or Freddie Mac are hereby given notice that they have 72 hours upon certified receipt of this Notice to enter a rebuttal by showing Verification of Proof of Claim as required. Failure to enter a rebuttal means that the BANK(s) and/or Fannier Mae and Freddie Mac admit(s) to having no claims to this Mortgage and thereby "forever" releases all claims against the Homeowner and this property. BOA and/or Fannie Mae and/or Freddie Mac will have entered a "no contest" to this notice.

After the 72 hours, BOA and/or Fannie Mae and/or Freddie Mac will have exhausted their administrative remedy on this final public filing. BOA and/or Fannie Mae and/or Freddie Mac can no longer lay claim on Homeowner or this property from that date forward.

If BOA and/or Fannie Mae and/or Freddie Mac's Trustee/Attorney attempt to sell or foreclose on this property after this default declaration, then they do so knowing they have no standing or right of enforcement. Therefore, doing so will make them guilty of

extortion, theft and fraud, including fraud upon the court. **All felonies punishable with prison terms.**

Should BOA and/or Fannie Mae or Freddie Mac's Trustee/attorney attempt to proceed with a foreclosure action, they do so at their full commercial liability and shall be named a co-defendant against them in a wrongful foreclosure civil action for 3x the loan amount.

_____
Marilynn M. English

June 18, 2012_____
Date

STATE OF NEW JERSEY

ESSEX COUNTY

Sworn and Subscribed to
Before Me this 18ᵀᴴ Day of June, 2012

_____
ROBERT J. CANNIZO
ATTORNEY AT LAW, STATE OF N.J.

# EXHIBIT 11

**From:** Valerie Picardi Wolfson <totalresource247@aol.com>
**To:** Marilyn English <lishmar@aol.com>
**Subject:** Market Analysis of 97 Pease Ave.
**Date:** Sun, Dec 8, 2013 3:52 pm

December 8, 2013

Re: 97 Pease Ave., Verona, NJ 07044

To Whom It May Concern:

In my professional opinion, based on active and properties that sold over the last six months that are comparable to 97 Pease Ave., Verona, NJ, the property's current market value is $499,000.

Sincerely,

Valerie Picardi

Real Estate Strategist

973 960-9724

Keller Williams Suburban Realty

250 S. Livingston Ave.

Livingston, NJ 07039

# EXHIBIT 12



Certified Forensic Loan Auditors

## *CERTIFIED FORENSIC LOAN AUDITORS, LLC*
13101 West Washington Blvd., Suite 140, Los Angeles, CA 90066
Phone: 310-432-6304; Sales@CertifiedForensicLoanAuditors.com
www.CertifiedForensicLoanAuditors.com

# *PROPERTY*
# *SECURITIZATION ANALYSIS REPORT*™

"This is a Securitization Analysis Report and not a Forensic Audit Report"

*Prepared for:*

# **MARILYNN ENGLISH**

*For Property Address*

*97 Pease Avenue*
*VERONA, NJ 07044*

*Prepared on:*
*May 12, 2013*

Disclosure: You have engaged Certified Forensic Loan Auditors, LLC to examine your real estate documents. This information is not to be construed as legal advice or the practice of law, pursuant to *Business and Professions Code § 6125 et seq*, it is the intent of CFLA, its members, auditors and independent contractors, not to engage in activities that could be considered the practice of law by conduct exhibiting any of the following practices: "...the doing and/or performing of services in a court of justice in any matter depending therein throughout the various stages and in conformity with the adopted rules of procedure. It includes legal advice and counsel and the preparation of legal instruments and contracts by which the legal rights are secured although such matter may or may not be depending in a court."



Certified Forensic Loan Auditors

# SECTION 1: TRANSACTION DETAILS
## BORROWER & CO-BORROWER:

| BORROWER | CO-BORROWER |
|---|---|
| MARILYNN ENGLISH | NONE |
| **CURRENT ADDRESS** | **SUBJECT ADDRESS** |
| 97 Pease Avenue VERONA, NJ 07044 | 97 Pease Avenue VERONA, NJ 07044 |

# SECTION 2: SECURITIZATION
## SECURITIZATION PARTICIPANTS:

| DEED | DATE | NOTE | DATE |
|---|---|---|---|
| AMERICA'S WHOLESALE LENDER A Countrywide Home Loans, Inc. company 4500 Park Granada Calabasas, CA 91302 | MARCH 21, 2003 | AMERICA'S WHOLESALE LENDER A Countrywide Home Loans, Inc. company 4500 Park Granada Calabasas, CA 91302 | MARCH 21, 2003 |
| | | FANNIE MAE GUARANTEED REMIC PASS-THROUGH CERTIFICATES FANNIE MAE REMIC TRUST 2003-42 | ACQUISITION DATE: April 1, 2003 ISSUE DATE: April 30, 2003 |

The Mortgage and the Note have taken two distinctly different paths. The Mortgage was never transferred. The $315,750 note may have been however pooled, sold, transferred with other loans and mortgages and this pool of loans and mortgages in this security offering of $2,797,067,000. The webpage link can be found at:

**REGISTRANT:**
http://www.fanniemae.com/syndicated/documents/mbs/remicsupp/2003-042.pdf



Certified Forensic Loan Auditors

# MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (MERS) ANALYSIS

- The Mortgage has MIN number 1000157-0001388532-8 and is registered at the MERS SERVICER ID website https://www.mers-servicerid.org/sis/search showing Bank of America, NA as Servicer and Fannie Mae as Investor.

- Although MERS records an assignment in the real property records, the promissory note which creates the legal obligation to repay the debt has not been transferred nor negotiated by MERS.

- MERS is never entitled to receive a borrower's monthly payments, nor is MERS ever entitled to receive the proceeds of a foreclosure or MORTGAGE sale.

- MERS is never the owner of the promissory note for which it seeks foreclosure.

- MERS has no legal or beneficial interest in the loan instrument underlying the security instrument for which it serves as "nominee".

- MERS has no legal or beneficial interest in the mortgage indebtedness underlying the security instrument for which it serves as "nominee".

- MERS has no interest at all in the promissory note evidencing the mortgage indebtedness.

- MERS is not a party to the alleged mortgage indebtedness underlying the security instrument for which it serves as "nominee".

- MERS has no financial or other interest in whether or not a mortgage loan is repaid.

# EXHIBIT 13

# EXHIBIT 2

Prepared by: DEBORAH L WAHLENS

LOAN #: REDACTED 5389

# NOTE

ORIGINAL

MARCH 21, 2003                    PARSIPPANY                    NEW JERSEY
[Date]                            [City]                        [State]

97 PEASE AVE, TOWNSHIP OF VERONA, NJ 07044
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 315,750.00        (this   amount   is   called
"Principal"), plus interest, to the order of the Lender. The Lender is
AMERICA'S WHOLESALE LENDER

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of    5.000 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  FIRST        day of each month beginning on
MAY 01, 2003       . I will make these payments every month until I have paid all of the principal and interest and any
other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due
date and will be applied to interest before Principal. If, on  APRIL 01, 2018       , I still owe amounts under this Note, I
will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $2,496.93

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment
to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of
the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment
unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other
loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge
shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from
me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the
Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated
as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  FIFTEEN        calendar
days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000 % of my
overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Initials: _____
VMP MORTGAGE FORMS - (800)521-7291

-5N (0207)        CHL (08/02)(d)                    Page 1 of 2                        Form 3200 1/01

* 2 3 9 9 1 *                                              * 0 2 6 0 4 5 3 8 9 0 0 0 0 0 2 0 0 5 N *

LOAN #: Redacted5389

#### Notice of Default

I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

#### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

#### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

#### 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

#### 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

#### 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

#### 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

PAY TO THE ORDER OF _____

WITHOUT RECOURSE

COUNTRYWIDE HOME LOANS, INC.

DOING BUSINESS UNDER THE FICTITIOUS

BUSINESS NAME OF AMERICA'S WHOLESALE

LENDER A NEW YORK CORPORATION

BY _____

David A. Spector

Managing Director

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
MARILYNN ENGLISH              -Borrower                                              -Borrower

_____ (Seal)        _____ (Seal)
                              -Borrower                                              -Borrower

*[Sign Original Only]*

# EXHIBIT 14

THIS IS A COPY OF THE ORIGINAL NOTE FROM CLOSING – SIGNATURE ON THIS DOES NOT MATCH SIGNATURE ON ATTORNEY'S EXHIBIT

Prepared by: DEBORAH L. WAHLERS

LOAN #: 026045389

# NOTE

ORIGINAL

MARCH 21, 2003        PARSIPPANY        NEW JERSEY
[Date]        [City]        [State]

97 PEASE AVE, TOWNSHIP OF VERONA, NJ 07044
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 315,750.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
AMERICA'S WHOLESALE LENDER

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.000 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the FIRST day of each month beginning on
MAY 01, 2003 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on APRIL 01, 2018 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 2,496.93

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN. calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Initials: [signature]

VMP MORTGAGE FORMS - (800)521-7291

-5N (0207)     CHL (08/02)(d)     Page 1 of 5     Form 3200 1/01



*23991*



*0260453890000002005N*

LOAN #: 026045389

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and 'Notice of Dishonor.' "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)     _____ (Seal)
MARILYNN ENGLISH              -Borrower                                  -Borrower

_____ (Seal)     _____ (Seal)
                              -Borrower                                  -Borrower

*[Sign Original Only]*

# EXHIBIT 15

## OUR MANAGER AND THE MANAGEMENT AGREEMENT

**General**

We are externally advised and managed by PCM. All of our officers are employees of PCM or its affiliates. The executive offices of PCM are located at 27001 Agoura Road, Third Floor, Calabasas, California 91301 and the telephone number of PCM's executive offices is 1-818-224-7442.

**Officers of Our Manager and Our Servicer**

The following sets forth certain information with respect to the executive officers and employees of PennyMac:

| Name | Age | Position Held with PennyMac |
|------|-----|------------------------------|
| Stanford L. Kurland | 57 | Chairman and Chief Executive Officer of PCM and PLS |
| David A. Spector | 46 | Chief Investment Officer of PCM and PLS |
| Farzad Abolfathi | 48 | Chief Information Officer of PCM and PLS |
| Scott D. Anderson | 44 | Chief Mortgage Operations Officer of PLS |
| Andrew S. Chang | 32 | Chief Business Development Officer of PCM |
| Jeff Grogin | 49 | Chief Legal Officer and Secretary of PCM and PLS |
| Anne D. McCallion | 55 | Chief Financial Officer of PCM and PLS |
| Michael L. Muir | 43 | Chief Capital Markets Officer of PCM and PLS |
| David M. Walker | 54 | Chief Credit Officer of PCM and PLS |
| Julianne Fries | 46 | Chief Compliance Officer of PCM and PLS |
| Aratha M. Johnson | 41 | Chief Administrative Officer of PCM |
| John M. Lawrence | 38 | Managing Director, Loan Servicing of PLS |
| Brandon Ohnemus | 30 | Director of Portfolio Strategy of PCM |
| Lee Trumble | 51 | Director of Due Diligence of PCM |

**Stanford L. Kurland.**  Mr. Kurland is the chairman and chief executive officer of PCM and PLS. Mr. Kurland is an accomplished executive in financial services with more than 27 years of experience in the mortgage banking arena. Prior to founding PennyMac in January 2008, Mr. Kurland served as chief financial officer and then chief operating officer at Countrywide. Mr. Kurland is well recognized for his leadership in developing the strategic direction, risk management activities, financial management and organizational development of Countrywide. During his tenure at Countrywide from January 1979 to September 2006, Countrywide grew in market capitalization from just over one million dollars to a leading financial services firm with over $25 billion in market value. Mr. Kurland began his professional career in 1975 in public accounting and practiced as a CPA for the international accounting firm, Grant Thornton LLP. Mr. Kurland holds a BS in Business Administration and Accounting from California State University, Northridge.

**David A. Spector.**  Mr. Spector is the chief investment officer of PCM and PLS. In that role he is responsible for oversight of all activities pertaining to investments, and directs the activities of portfolio management, capital markets and credit as each relates to mortgage credit and company credit risk. Prior to joining PennyMac in March 2008, Mr. Spector was co-head of global residential mortgages for Morgan Stanley, based in London. Prior to joining Morgan Stanley in September 2006, Mr. Spector was senior managing director, secondary marketing, for Countrywide, from May 1990 to August 2006, where he was responsible for all secondary marketing activities, including interest rate risk management, and directed loan trading, loan pricing, pipeline hedging, and MSR hedging. Mr. Spector was a member of the Countrywide Asset Liability and Credit Committees, as well as Freddie Mac and Fannie Mae Advisory Committees. Mr. Spector began his career in 1985 at First Boston in the Mortgage Finance Group in New York. Mr. Spector holds a BA in History from the University of California at Los Angeles.

# EXHIBIT 16

November 11, 2013

Bank of America N.A.
TX2-991-11-01
100 North Tryon Street
Charlotte, NC 28255-0001

Sent via certified mail return
Receipt requested no. 7013 1710 0000 5208 0418

Dear Sirs/Ladies:

    Re: 97 Pease Avenue, Verona, New Jersey 07044
        Mortgage Discharged 8/20/2003 and originated on 7/24/2002.

      Per the attached Mortgage, please provide the original cancelled note and
mortgage with the wet ink signatures for this loan. Also please provide a copy of the
cancelled check proving that this loan was paid in full.

      I have contacted MERS who advised I contact Bank of America.who is listed as
the Servicer.

      Thank you so much.

                       Yours very truly,

                       Marilynn English
                       97 Pease Avenue
                       Verona, NJ 07044

English    Customer Service    USPS Mobile                                                                Register / Sign In



Quick Tools
Track                                    Ship a Package        Send Mail        Manage Your Mail        Shop        Business Solutions
                          Find
Find USPS Locations
Buy Stamps
Schedule a Pickup
Calculate a Price     USPS Tracking™                                                                  ✉ Customer Service ›
Find a ZIP Code™                                                                                          Have questions? We're here to help.
Hold Mail
Change of Address

Tracking Number: 70131710000052080418

Scheduled Delivery Day: November 16, 2013

## Product & Tracking Information                              Available Options

| Postal Product: | Features: | |
| --- | --- | --- |
| First-Class Mail® | Certified Mail™ | Return Receipt |

| DATE & TIME | STATUS OF ITEM | LOCATION |
| --- | --- | --- |
| November 18, 2013 , 6:29 am | Delivered | CHARLOTTE, NC 28255 |
| November 16, 2013 , 1:37 am | Arrival at Unit | CHARLOTTE, NC 28228 |
| November 16, 2013 , 12:52 am | Processed through USPS Sort Facility | CHARLOTTE, NC 28228 |
| November 15, 2013 | Depart USPS Sort Facility | CHARLOTTE, NC 28228 |
| November 15, 2013 , 10:32 am | Processed through USPS Sort Facility | CHARLOTTE, NC 28228 |
| November 13, 2013 , 9:01 pm | Processed at USPS Origin Sort Facility | KEARNY, NJ 07099 |
| November 13, 2013 | Depart USPS Sort Facility | KEARNY, NJ 07099 |
| November 13, 2013 , 5:17 pm | Dispatched to Sort Facility | VERONA, NJ 07044 |
| November 13, 2013 , 12:41 pm | Acceptance | VERONA, NJ 07044 |

## Track Another Package

**What's your tracking (or receipt) number?**

|                                                          | Track It › |

**LEGAL**
Privacy Policy ›
Terms of Use ›
FOIA ›
No FEAR Act EEO Data ›

**ON USPS.COM**
Government Services ›
Buy Stamps & Shop ›
Print a Label with Postage ›
Customer Service ›
Delivering Solutions to the Last Mile ›
Site Index ›

**ON ABOUT.USPS.COM**
About USPS Home ›
Newsroom ›
USPS Service Alerts ›
Forms & Publications ›
Careers ›

**OTHER USPS SITES**
Business Customer Gateway ›
Postal Inspectors ›
Inspector General ›
Postal Explorer ›

From: lishmar <lishmar@aol.com>
To: mers.2 <mers.2@bankofamerica.com>
Subject: Re: 97 pease avenue verona, new jersey 07044
Date: Tue, Nov 12, 2013 1:02 pm

but if MERS is stated as being the entity who paid the debt and discharged the debt, why would Bank of America have it, they did not take over Countrywide until six years later.

Marilynn English
English Financial
Ph. 973 857 3922
Fax 973 857 3970
Cell 973 650 6984


-----Original Message-----
From: MERS.2 <mers.2@bankofamerica.com>
To: lishmar <lishmar@aol.com>
Sent: Tue, Nov 12, 2013 12:50 pm
Subject: RE: 97 pease avenue verona, new jersey 07044

Hi Maryann,

Our MERS department does not have the requested documents. I have forwarded your request to the Lien Release Department. If you would like to contact them please call 800-669-4807. You may also fax in your request to one of the following numbers: 866-234-1855 or 888-860-1167

MERS shows Bank of America as the last servicer because when Countrywide was purchased by Bank of America all the information that read Countrywide was changed to read Bank of America.

Thank you,

Christina Ornelas
Final Document Services
Post Closing and Central Services

***Please send all MERS related correspondence to MERS.2@bankofamerica.com or call (213) 345-1931***

From: lishmar@aol.com [mailto:lishmar@aol.com]
Sent: Monday, November 11, 2013 5:48 PM
To: MERS.2
Subject: 97 pease avenue verona, new jersey 07044

MERS advise I contact you.

Please provide the cancelled note and mortgage with the wet ink signatures for this loan that originated on 7/24/2002 and was paid on 8/20/2003. This loan originated with Countrywide and they were the servicer. However, MERS is stating that Bank of America is the servicer. I am also requesting a copy of the cancelled check proving payment in full.

Thank you so much.

If you have any questions, please feel free to contact me.

Marilynn English
English Financial
Ph. 973 857 3922
Fax 973 857 3970
Cell 973 650 6984

This message, and any attachments, is for the intended recipient(s) only, may contain information that is
privileged, confidential and/or proprietary and subject to important terms and conditions available at
http://www.bankofamerica.com/emaildisclaimer. If you are not the intended recipient, please delete this
message.

**From:** lishmar <lishmar@aol.com>

**To:** mers2 <mers2@bankofamerica.com>

**Subject:** 97 pease avenue verona, new jersey 07044

**Date:** Mon, Nov 11, 2013 8:03 pm

Please provide the cancelled note and mortgage with the wet ink signatures for the loan originated with Countrywide on 7/24/2002 and discharged on 8/20/2003. MERS advise I contact you. Bank of America is listed as the servicer but, I never paid Bank of America, as they were a separate entity from Countrywide at the time. The merger did not take affect until after July 1, 2008.

I am also requesting a copy of the cancelled check proving this loan was paid in full.

Thank you so much.  If you have any questions, please do not hesitate to contact me.

Marilynn English
English Financial
Ph. 973 857 3922
Fax 973 857 3970
Cell 973 650 6984

**From:** lishmar <lishmar@aol.com>
**To:** yuliaa <yuliaa@mersinc.org>
**Subject:** GOOD EVENING
**Date:** Thu, Nov 7, 2013 11:29 pm

On my 2002 Mortgage on 97 Pease Avenue, Verona, NJ 07044, MERS is alleged as the payor of that mortgage and the entity of record on the discharge with the County of Essex. To that end, could I please have a copy of the cancelled note and mortgage which I never received.

If you have any questions, please feel free to call me.

Thank you so much.

m.english


Marilynn English
English Financial
Ph. 973 857 3922
Fax 973 857 3970
Cell 973 650 6984

**MARILYNN ENGLISH**
97 PEASE AVENUE
VERONA, NEW JERSEY 07044

Hon. Claire c. Cecchi
Martin Luther King Jr.
Federal Building & Courthouse
50 Walnut Street
Newark, New Jersey 07102