Marilynn English *Pro Se*
97 Pease Avenue
Verona, New Jersey 07044

**RECEIVED**

**JUN 1 2 2014**

AT 8:30_____M
WILLIAM T. WALSH, CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARILYNN ENGLISH *Pro Se*

      Plaintiff

        v.

FEDERAL NATIONAL MORTGAGE
ASSOCIATION, FEDERAL HOME LOAN
MORTGAGE CORPORATION, BANK
OF AMERICA, N.A.

      Defendants

Civil Action No. 13-2028(CCC)

**THIRD AMENDED COMPLAINT
TO QUIET THE TITLE,
TO RESCIND AN ASSIGNMENT
OF MORTGAGE THAT WAS
INELIGIBLE TO BE RECORDED,
AND TO CANCEL THE NOTE
DUE TO FORGERY**

## TABLE OF CONTENTS

Page

STATEMENT OF FACTS                                                  2

LEGAL ARGUMENT                                                      2

I.  MERS                                                            3

II. FANNIE MAE                                                      3

MATERIAL DISPUTES OF FACT
   I. ROBO-SIGNING AND THE INELIGIBLE ASSIGMENT                     5

II.  RETURN OF PAYMENTS                                             8

III. THE FORGED/FRAUDULENT NOTE                                     8

IV. THE INDORSEMENT                                                 12

V.   CORRECTIVE ASSIGNMENT OF MORTGAGE                              13

VI.  DISCOVERY                                                      13

VII. THE SUSER CASE IN SUPPORT OF PLAINTIFF'S
     COMPLAINT FOR QUIET TITLE                                      14

VIII. VIOLATION OF THE NJCFA                                        14

CONCLUSION                                                          14

CERTIFICATION                                                       15

i

# TABLE OF AUTHORITIES

**CASE**                                                                 **PAGE**

In Re Agape Litigation 09-Cv-1606 (ADS)
(AKT) and 09-CV-1782 (ADS) (AKT) United
States District Court Eastern District of New York
March 29, 2011                                                              11

Kenneth B. Barton v. RCI LL. United States District
Court for the District of New Jersey Civil Action
No. 10-3657 July 22, 2011                                                   14

Charest v. Fannie Mae, U.S. District Court
for the District of Massachusetts
March 27, 2014 Civil Action No. 13-11267                                     3

Herbert Elesh v. Mortgage Electronic Registration
Systems Inc. Case No. 12C 10355 United States
District Court for the Northern District of Illinois,
Case No. 12C 10355, August 16, 2013                                          5

Garet Giles v. Bank of America United States District
Court for the Western District of Texas San Antonio
Division, Civil Action No. SA-11-cv-1035
OG(NN) March 27, 2012                                                        7

Thomas Glaski v. Bank of America, Court of Appeals
California Fifth Circuit July 31, 2013                                        7

Hassler v. Sovereign Bank, 644 F. Supp. 2d 509, 514 (D
N.J. 2009                                                                   15

Haines v. Kerner, 404 U.S. 519, 520 (1972)                                  15

Johnson v. Martinus 9 N.J.L. 144 New Jersey Supreme
Court May 1827                                                              13

Kemp v. Countrywide Home Loans, Inc. (In Re Kemp)
440 B.R. 624 United States Bankruptcy Court for the
District of New Jersey Case No. 08-18700-JHW
November 16, 2010                                                    9, 13

Clinton B. Kirby v. Bank of America N.A. et al United
States District Court for the Southern District of
Mississippi Case No. 2:09-CV-00182 DCH-JMB                          12

Bill R.Leep and Jacqueline Watts Leep v. The Bank
of New York Mellon United States District Court for
the District of Oregon, Civ. No. 11 3109-CL 9/25/2011               5

Liberty Lobby, 477 U.S. at 256                                      15

Morse v. Lower Merion Schl. Dist. 132 F 3d 902, 906
(3rd Cir. 1997)                                                     15

Riker v. Corley, 3 N.J. L. 469 New Jersey Supreme
Court November, 1811                                                12

Joanne Payton, Plaintiff-Respondent v. New Jersey Turnpike
Authority Defendant – Appellant et al A-91 Supreme Court
of New Jersey 148 N.J. 524; 691 A.2d 321; 1997 (CCH) P44,
645 March 26, 1997                                                  13

Rosner v. Bank of China No. 06-CV13562 2008 WL
5416380 at 4 (S.D.N.Y.) Dec. 18, 2008 aff'd 349
Fed. App'x 637 (2d Cir. 2009)                                       11

State of New Jersey Plaintiff-Respondent v. Blaine F.
Scoles, Defendant-Appellant, A-41 Supreme Court of
New Jersey 2013                                                     13

State of New Jersey, Plaintiff-Respondent v. Ralph Cooper
and Collis English Defendants-Appellants Supreme Court
of New Jersey 10 N.J. 532; 92 A.2d 786: 1952
November 24, 1952                                                   10

iii

William Suser, Plantiff-Appellant v. Wachovia Mortgage, FSB
f/k/a World Savings Bank FSB, Docket No. A-1330-1212
Superior Court of New Jersey Appellate Division 2013 N.J.
Super November 4, 2013                                           14

**STATUTES**

N.J.S.A. 12A: 9-311                                              4

N.J.S.A. 12A: 9-105                                              4

N.J.S.A. 12A:3-203(d)                                           4

N.J.S.A. 12A:9-311                                              4

N.J.S.A. 12A:9-102                                              4

N.J.S.A. 2C:28-7a(1) and 7(b)                                   7

N.J.S.A. 12A:3-604(a)                                           8

N.J.S.A. 12A:3-420(a)                                           8

N.J.S.A. § 56:8-2                                              14

N.J.S.A. 2A:62-1                                               14

**OTHER AUTHORITIES**

15 U.S.C. § 7021 Section 322.016                               4

Title 18  USC § 4- Misprision of Felony                        6

Title 18 USC Chapter 47 § 1021                                 7

Fed. R. Civ. P. 12(b)(6)                                       5

U.C.C. Article 3- § 3-301                                      8

U.C.C. Article 3- § 3-302                                    8

v

Marilynn English *Pro Se*
97 Pease Avenue
Verona, New Jersey 07044

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARILYNN ENGLISH *Pro Se*

       Plaintiff                    Civil Action No. 13-2028(CCC)

          v.

FEDERAL NATIONAL MORTGAGE
ASSOCIATION, FEDERAL HOME LOAN
MORTGAGE CORPORATION, BANK
OF AMERICA, N.A.

        Defendants             **THIRD AMENDED COMPLAINT**
                             **TO QUIET THE TITLE,**
                             **TO RESCIND AN ASSIGNMENT**
                             **OF MORTGAGE THAT WAS**
                             **INELIGIBLE TO BE RECORDED,**
                             **AND TO CANCEL THE NOTE**
                             **DUE TO FORGERY AND FRAUD**

       Judicial notice should be taken that Plaintiff is confused by the Notice of

Electronic Filing which states "*Plaintiff is granted 14 days to reinstate this matter and*

*file an Amended Complaint*" and the Judge's Opinion which states "*Defendant's*

*Second Motion to Dismiss is granted  without prejudice*".

       Plaintiff brings this third Amended Complaint to Clarify the Record and prove,

once again, the many  material disputes of fact. There are too many material disputes of

fact that have been overlooked by this Court perhaps because Plaintiff was unclear in her

pleadings.

## STATEMENT OF FACTS

In September 1988, I purchased my home in Verona, New Jersey.

On July 24, 2002, Plaintiff obtained a full documentation 15 year fixed loan from Countrywide, America's Wholesale Lender in the amount of $192,500, (Exhibit 1). Judicial Notice should be taken of the signature on this Note. Attached as (Exhibit 2) is a certification from the closing agent regarding Plaintiff's signature on the 2002 loan.

This 202 loan was a first lien. Unknown to Plaintiff at the time, only an interest in the mortgage loan instrument was sold to Federal Home Loan Mortgage Corporation, ("Freddie Mac") or FHLMC. This information is confirmed from document review of Joe Esquivel of Mortgage Compliance Investigators (MCI).

In March 2003, Plaintiff obtained a refinance of that loan in the amount of $315,750 from Countrywide America's Wholesale Lender, paying off the first mortgage From 2002 and a home equity loan. The new loan was a full documentation 15 year fixed loan.

This 2003 loan is the subject of this Complaint.

The HUD form showed the payoffs to Countrywide (Exhibit 3).

A Property Securitization Analysis Report by Certified Forensic Loan Auditors, LLC indicates the lender as America's Wholesale Lender (Exhibit 4).

## LEGAL ARGUMENT

From reading Judge Cecchi's Opinion, it appears that perhaps Plaintiff was not clear in my argument and perhaps there is some confusion with regard to Fannie Mae and Freddie Mac and their roles in this complaint.

This Third Amended Complaint is to clearly document the reasons for the

2

complaint which have adversely affected the title to my home inclusive of the fraud perpetrated by the Defendants.

As the Court states, for a complaint to survive dismissal pursuant to Fed. R. Civ. P. 12(b)(6), it must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" The cases that have survived motions to dismiss have alleged a pattern of misrepresentations, failure to correct detrimental errors, and/or dilatory conduct on the part of the servicer and/or bank that the courts have found could amount to unfair or deceptive practices. See Charest v. Fannie Mae, 2014 U.S. District Court for the District of Massachusetts March 27, 2014 Civil Action No. 13-11267. The misrepresentations by the Defendants are addressed in Plaintiff's Section Material Disputes of Fact I, Robo-signing and the Ineligible Assignment which also addresses the fraudulent Assignment, III The Forges/Fraudulent Note, and IV the Indorsement.

Plaintiff has submitted numerous facts and third party affidavits. Plaintiff has provided many material disputes of fact which warrant the continuation of this case as well as Discovery.

## I. MERS ANALYSIS

Attached as Exhibit 5 is the Mortgage Electronic Registration Systems (MERS) Analysis, listing the responsibilities of MERS and states the fact that MERS Acts as nominee only.

## II. FANNIE MAE

On March 21, 2003 Plaintiff obtained a 15 year fixed full documentation loan from Countrywide, America's Wholesale Lender. On the HUD, it clearly states that two Countrywide loans were paid in full, Exhibit 3 previously noted.

Fannie Mae purchased only an interest in that mortgage loan instrument. The

3

entire mortgage instrument, being the Tangible Promissory Note, the Mortgage and the intangible payment obligation do not have Fannie Mae named to the Note, and is not named into the public record. In addition to be named into the public record, it must be timely, pursuant to N.J.S.A. 12A:9-311,. [Perfecting of Security interests in Property Subject to Certain Statutes, Regulations and Treaties]. While Fannie Mae purchased the Intangible Payment Obligation from the Loan Originator, it was a transferable record and as such is governed by 15 U.S.C. § 7021 Section 322.016 Transferable Records (a) in this section, "transferable record" means an electronic record that: (1) would be a note under Chapter 3, or a document under Chapter 7, if the electronic record were in writing; and (2) the issuer of the electronic record expressly has agreed is a transferable record; and or possibly pursuant to N.J.S.A. 12A:9-105 Control of Electronic Chattel Paper.

Pursuant to N.J.S.A. 12A:3-203(d), if a transferor purports to transfer less than the entire instrument, negotiation of the instrument does not occur. The transferee obtains no rights under this chapter and has only the rights of a partial assignee.

Under N.J.S.A. 12A-9-311, Fannie Mae purchased an Unsecured Transferable Record that was created through a third party account debtor (N.J.S.A. 12A-9-102). "Account debtor" means a person obligated on an account, chattel paper, or general intangible. The term does not include persons obligated to pay a negotiable instrument, even if the instrument constitutes part of chattel paper.

Attached as Exhibit 6 is the Lien Search and information on the Note, prepared by Certified Forensic Loan Auditors which states that the Mortgage and Note have taken two different paths. Record # 12 clearly states that the lender was America's Wholesale Lender. However, we have no proof of the entity that actually funded the loan. Several

4

requests to the Defendants for that information have been ignored.

The premise of the Quiet Title, Quia Timet lawsuit is to clear the title through the issuance of a quiet title judgment which provides that the Plaintiff has legal and good title on the current loan allegedly with Fannie Mae as well as the previous loan with Freddie Mac.

In the case Bill R. Leep and Jacqueline Watts Leep v. The Bank of New York Mellon United States District Court for the District of Oregon, Civ. No. 11 3109-CL 9/15/2011 the Court ruled "*Because the presence of MERS demonstrates a high probability that Defendants did not comply with the recording requirements of the Oregon Trust Deed.* "

In the case Herbert Elesh v. Mortgage Electronic Registration systems, Inc. Case No. 12C 10355 United States District Court for the Northern District of Illinois, Case No. 12C 10355, August 16, 2013, the Court ruled "*that the Assignment is questionable and the Plaintiff in this action had a viable argument in challenging the validity of the Assignment. The recorded Assignment constitutes a Cloud on his Title. An obligor has an interest in ensuring that he will not have to pay the same claim twice.*"

As the Court states, for a complaint to survive dismissal pursuant to Fed. R. Civ. P. 12(b)(6), it must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

## MATERIAL DISPUTES OF FACT

### I. ROBO-SIGNING AND THE INELIGIBLE ASSIGNMENT

Plaintiff believes that the Court erred in its ruling with regard to the reason Plaintiff filed the Quiet Title Action. I did not allege anything with regard to the robo-

5

signing. I stated a fact and presented evidence. This evidence consisted of:

1. notarized affidavit from John O'Brien, Exhibit 7. John is an expert in the title industry as the Recorder for the County of Essex County, Massachusetts in an elected position he has held for 27 years. In his Certification, John clearly states *"the affidavit may be presented to show that your chain of title has been corrupted"*. There is no mention that it is alleged. John is stating a fact that he certified and notarized.

2. Plaintiff also provided a Property Securitization Analysis Report from Certified Forensic Loan Auditors, LLC (CFLA) which states that the Mortgage was never transferred and took a totally different path from the Note, See Exhibit 6 as noted above.

3. Another Audit was prepared by Securitization Auditor International which states:

a) a falsely claimed position of authority for Chester Levings, the signer of the Assignment. Accessory to Fraud – Notary.

Plaintiff provided proof that the signer, Chester Levings is in reality an employee of Bank of America , not an employee of MERS as the Assignment states.

b) Plaintiff provided proof that the Notary, Evette Ohanian is in fact a known robo-signer. In this instance, she worked in concert with fellow "robo-signer" Chester Levings, falsely attesting to the validity of Levings' signature as Assistant Secretary of Mortgage Electronic Registration Systems, Inc. Exhibit 8.

c) The recorded Assignment to which they refer is attached as Exhibit 9.

d) These acts are in violation of the following:

Title 18 USC § 4 –Misprision of Felony "Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States conceals and

6

does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years or both;

N.J.S.A. 2C:28-7a(1) and 7(b), Recording a fraudulent document makes signer(s) guilty of a third degree crime;

Title 18 USC Chapter 47 § 1021  Whoever, being an officer or other person authorized by any law of the United States to record  conveyance of real property or any other instrument which by such law may be recorded, knowingly certifies falsely that such conveyance or instrument has or has not been recorded, shall be fined under this title or imprisoned not more than five years or both.

Plaintiff refers to Garet Giles v. Bank of America United States District Court for the Western District of Texas San Antonio Division, Civil Action No. SA-11-cv-1035 OG(NN), March 27, 2012. In this Case, the Court ruled "*I recommend denying the request to dismiss plaintiff's claim to Quiet title.*" "*Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the Plaintiff.*"

Another case in Plaintiff's favor is Thomas Glaski v. Bank of America, Court of Appeals California Fifth Circuit Court, July 31, 2013 which addressed Quiet Title, Fraud and Assignments that were void. Ruling: "*we reject the view that a borrower's challenge to an assignment must fail once it is determined that the borrower was not a party to, or third party beneficiary of the assignment agreement. Courts should proceed to the question of whether the assignment was fraud.  The claims for Quiet Title, Declaratory Relief, Cancellation of Instruments and Unfair Business Practices be remanded.*"

7

4. Plaintiff recently obtained information from Mortgage Compliance Investigators who stated that only an interest in the loan was sold to Fannie Mae.

Fraudulent Assignments are addressed in the recent report by the <u>Florida Office of the Attorney General Economic Crimes Division entitled Unfair, Deceptive and Unconscionable Acts in Foreclosure Cases.</u> Several sections of the Report are addressed inclusive of *The Key* which addresses Assignments. Relevant pages addressing the Assignments are attached as Exhibit 10.

## II.    RETURN OF PAYMENTS

The Court's Opinion makes reference to Plaintiff's production of loan payments. The fact of this document production was that Defendants returned some payments. They were included as Exhibit 5 in <u>Plaintiff's Response to the Memoranda of Law of Defendants Bank of America and Federal National Mortgage Association dated January 23, 2014</u> (Attached as Exhibit 11 in this Motion. Pursuant to <u>N.J.S.A. 12A:3-604(a)</u> *the return of checks by the payee constitute an intentional and voluntary surrender of the instrument.* Pursuant to <u>N.J.S.A. 12A:3-420(a)</u> *the return of the checks revokes the payee's standing to enforce payment of the check.* See <u>Mortgage Electronic Registration Sys. v.. Amboy Nat'l Bank, , N.J.Super. Docket No. A-3933-09T1 May 24, 2012.</u>

## III.    THE FORGED/FRAUDULENT NOTE

1. Plaintiff requested the original note and mortgage with the wet ink signature for years from Bank of America through several QWR requests as well as through a Notice of Default attached as Exhibit 12. This Notice clearly addresses <u>U.C.C. Article 3-§3 -301</u> and <u>U.C.C. Article 3-§3- 302.</u> Pursuant to <u>U.C.C. Article 3-  §3-302 BOA,</u> Fannie Mae and/or Freddie Mac were requested to provide proof that they are the Note

Holder of Due Course and a Real Party in interest. A photocopy of the instrument is not
sufficient proof of holder in Due Course, valid chain of assignment or that BOA and/or
Fannie Mae and/or Freddie Mac are a real party in interest.

None of the Defendants responded to the letter and none of them provided the
required documents, for either the 2002 loan or the 2003 loan.

2.  I received contradictory information on the location of the 2003 Note from the
attorneys for Bank of America at Blank Rome (McGuigan) and Bank of America direct
(Exhibit 13) .

a.  Letter from January 10, 2012 from Matthew McGuigan of the law firm
Blank Rome stated the current owner of the note (no mention of the mortgage) is Fannie
Mae, whose address is 13150 World Gate drive, Herndon, VA 20170;

b.  Letter dated November 19, 2012 from Cindy Repreza of Bank of
America stated the owner of the note for this loan is Fannie Mae whose address is 3900
Wisconsin Avenue, NW, Washington, D.V. 20016-2892. Was the Note in Herndon,
Virginia or in Washington, D.C? I asked for the tracking receipts but did not receive
them. The location of the Notes was addressed in the deposition of Linda DeMartini in
the case. Kemp v. Countrywide Home Loans, Inc.(In re Kemp), 440 B.R. 624 United
States Bankruptcy Court for the District of New Jersey Case No. 08-18700-JHW
November 16, 2010. .Ms. DeMartini stated that "*the notes never left the Countrywide
vault*". In the Kemp case, the Judge stated *it becomes essential to establish that the
person who demands payment of a negotiable note, or to whom payment is made, is the
duly qualified holder. Otherwise, the obligor is exposed to the risk of double payment, or
at least to the expense of litigation incurred to prevent duplicative satisfaction of the*

*instrument. These risks provide makers with a recognizable interest in demanding proof*
*of the chain of title. Consequently, Plaintiffs here, as makers of the notes, may properly*
*press Defendant to establish its holder status.*"

When a copy of the Note was finally provided to the Court as Defendant's
Exhibit in this case, attached as Exhibit 14, Plaintiff noted that Plaintiff's signature on the
Note was a fake and did not match the signature on the copy Plaintiff obtained from the
closing. Nor does it match the copy in the possession of the Closing Agent which mirrors
my copy. The closing agent provided an e mail certifying that she personally
acknowledged witnessing the signature on the Note, ( Exhibit 15). Attached as
Exhibit 16 is the true copy of the Note from the 2003 closing. Judicial Notice should be
taken that the forged Note produced by the Defendants was input to the Court twice, on
12/18/2013 as ID No. 510 and on 4/08/13 as ID 76. In addition, Plaintiff filed a Police
Report in Verona for the forged/fraudulent document. The Municipal Court Judge
requested the identity of the person who prepared the Note. Plaintiff filed a Motion to
Compel by this Court. Judge Falk denied my Motion.

Judicial Notice should be taken that my signature on the 2002 Note and the 2003
Note are exactly the same. My signature on the HUD 1 is also the same. This signature
does not, in any way, match, the signature on the Note provided by the Defendants,
which Note was presented to the Court as "evidence". This would prove that the copy
submitted by the Defendants as an "original" is erroneous, a fake, a forgery and
fraudulent. Erroneous evidence is addressed in the case State of New Jersey, Plaintiff-
Respondent v. Ralph Cooper and Collis English Defendants-Appellant Supreme Court of
New Jersey 10 N.J. 532; 92 A.2d 786; 1952 November 24, 1952.

It is obvious from the signature on the Note provided by Defendants that it is not my signature; it does not match the signature on my copy of the Note or that of the closing Agent, nor does it match the signature on the HUD or the 2002 Note. Copies of all documents with the Closing Agent's certifications are included in Exhibit 15a .

This fraud was not addressed in the Court's Opinion.

Fraud was addressed in the <u>Case In Re Agepe Litigation 09-CV-1606 (ADS)</u> <u>(AKT) and 09-CV-1782 (ADS) (AKT) United States  District Court Eastern District</u> <u>of New York March 29, 2011</u>.  To establish liability for aiding and abetting fraud, a plaintiff must show (1) the existence of a fraud; (2) the defendants' knowledge of the fraud and (3) that the defendant provided substantial assistance to advance the fraud's commission, See <u>Rosner v. Bank of China No. 06-CV-13562 2008 WL 5416380 at 4</u> <u>(S.D.N.Y). Dec. 18, 2008 aff'd 349 Fed. App'x 637 (2d Cir. 2009).</u>

To address items 2 and 3, Attorney Yaffe did nothing to declare the Note submitted to the Court as a forgery, rather she claimed in the Settlement Conference that "*she knew what document Plaintiff signed at closing*".  Judicial Notice should be taken that Attorney Yaffe did not attend the closing in 2003. Rather than attempt to establish who provided that fraudulent Note, Attorney Yaffe did nothing.

On April 8, 2013, Jeffrey P. Catenacci, Attorney for BANA provided as his Exhibit 2 in <u>Defendants Bank of America N.A. and Federal National Mortgage</u> <u>Association's Memorandum of Law in support of Motion to Dismiss Plaintiff's Amended</u> <u>Complaint,</u>  a Note stamped Original with an indorsement from one David A.Spector, Managing Director. This is the same Note discussed above.  As previously stated there

are problems with this Note and material disputes of fact. I did not sign it; the signature

does not match my signature on the copy of the Note in my possession and in possession

of the closing agent.

Mr. Catennaci is now the only Attorney still standing and to date, he too has not

indicated any action he will take to determine who prepared and presented the fraudulent

Note. Without possession of the Note, Bank of America had no legal right to collect

payments.

Presenting fraudulent documents to the Court by an Attorney is Fraud Upon the

Court as well as a violation of RPC 8.4 Misconduct.

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly
(b) assist or induce another to do so, or do so through the acts of another(b)
    commit a criminal act that reflects adversely on the lawyer's honesty,
    trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

## IV. THE INDORSEMENT

The indorsement on the Note presented by Defendant is also fraudulent. The

manufactured indorsements were addressed by Michele Sjolander in the case Clinton B.

Kirby v. Bank of America N.A. et al United States District court for the Southern District

of Mississippi Case No. 2:09-CV-00182 DCH-JMB. Ms. Sjolander is currently a Senior

Vice President of Bank of America and a former employee of Countrywide. .Ms.

Sjolander stated that "*stamped indorsements and the Notes were printed off our imaging*

*system. "*The indorsement is undated. Mr. Spector was a Senior Managing Director at the

time in question (Exhibit 17). He was not a Managing Director.

Blank Indorsements are addressed in the cases Riker v. Corley, 3 N.J. L. 469

New Jersey Supreme Court November, 1811 which cites "The indorsement in blank was an authority for the indorsee to overwrite an assignment, and this might have been done even at the trial; but as it was not done, it did not appear that Corley had any interest in the note" and Johnson v. Martinus 9 N.J.L. 144 New Jersey Supreme Court May, 1827 in which the Court cites "*an indorsement while yet remaining in blank, and not filled up, is not a written instrument, nor entitled to its effect, protection or immunity. Before the note can be given in evidence to maintain an action, the indorsement must be filled up."*

In Kemp v. Countrywide Home Loans, Inc.(In re Kemp), 440 B.R. 624 United States Bankruptcy Court for the District of New Jersey Case No. 08-18700-JHW November 16, 2010. the Court stated "*in this case we had neither a proper indorsement on the note itself, nor an allonge that was executed at the time the proof of claim was filed"*

## V. CORRECTIVE ASSIGNMENT OF MORTGAGE

Bank of America, through their Attorney, Phelan Hallinan also fabricated a Corrective Assignment of Mortgage dated April 8, 2013 (Exhibit 18). Pursuant to my conversation with Shakena at the Essex County, New Jersey Recorder's Office on June 4, 2014, this Assignment was not recorded.

## VI. DISCOVERY

As there are too many material disputes of fact, Discovery is warranted.

Discovery is addressed in the cases State of New Jersey Plaintiff-Respondent v. Blaine F. Scoles, Defendant-Appellant, A-41 Supreme Court of New Jersey 2013 in which the Court stated "*that discovery has long been found to be a tool for truth"*and Joanne Payton, Plaintff-Respondent v. New Jersey Turnpike Authority, Defendant-

Appellant et al A-91 Supreme Court of New Jersey 148 N.J. 524; 691 A.2d 321; 1997

(CCH) P44,645 March 26, 1997 wherein the Court cited "In this case the Court ruled that

"*full discovery may enable Plaintiff to support and to advance her argument*."

## VII. THE SUSER CASE IN SUPPORT OF PLAINTIFF'S COMPLAINT FOR QUIET TITLE

William Suser, Plaintiff-Appellant v. Wachovia Mortgage, FSB f/k/a/

World Savings Bank FSB, Docket No. A-1330-1212 Superior Court of New Jersey

Appellate Division 2013 N.J.Super November 4, 2013.

In this case the Appellate Division held that the Plaintiff was permitted to

affirmatively file an action for quiet title because the question of whether Deutsche Bank

was the proper holder of the subject mortgage. Specifically, one of the purposes of

N..S.A. 2A:62-1 "*is to permit a landowner to sue for clarification of the validity or reach*

*of his title in circumstances that otherwise preclude a forum for the resolution of such a*

*dispute.*" The Court also ruled that though there was no dispute about validity and

priority of Defendant's mortgage, Plaintiff could maintain quiet title action under

N.J.S.A. 2A:62-1 to resolve limited questions of whether Defendant had standing in

light of factual disputes concerning the validity of its assignment.

## VIII. VIOLATION OF THE NJCFA

In the case Kenneth A. Barton v. RCL LL, United States District Court

for the District of New Jersey Civil Action No. 10-3657 July 22, 2011, the Court ruled

that Plaintiff suffered an ascertainable loss caused by the Defendant. N.J.S.A. § 56:8-2

addresses specifically where a claimant states a viable NJCFA claim where the claimant

alleges (1) unlawful conduct by an opposing party; (2) an ascertainable loss by the

claiming party and (3) a causal relationship that exists between the unlawful conduct and

14

the ascertainable loss JCFA states a claimant states a viable NJCFA claim where the claimant alleges Hassler v. Sovereign Bank, 644 F. Supp. 2d 509, 514 (D N.J. 2009)

## CONCLUSION

Plaintiff initially filed this complaint in Chancery Court, the Defendants moved it to Federal Court. Based on the information above, the Motion for Declaratory Judgment to Quiet the Cloud on Title with the Rescission of the Assignment that was ineligible to be recorded. The lien should be extinguished due to a forged, fraudulent and fake signature on the Note. Plaintiff is also requesting return of the payments made as the recipients had no standing to collect those payments In the least, the Case should continue and Discovery permitted to determine the facts where those are disputed.

A party cannot survive summary judgment simply by presenting conclusory allegations or denials; the existence of specific material evidentiary facts must be shown. See Liberty Lobby, 477 U.S. at 256.

Haines v. Kerner, 404 U.S. 519, 520-(1972) The court must "*accept as true all of the allegations in the complaint and all reasonable inference that can be drawn therefrom, and view them in light most favorable to the Plaintiff*". Morse v. Lower Merion Schl. Dist., 132 F. 3d 902, 906 (3d Cir. 1997). "*Liberal construction does not, however, require the court to credit a pro se plaintiff's "bald assertions" or "legal conslusons*". Plaintiff has provided several third party affidavits and factual information.

WHEREFORE, Plaintiff respectfully requested the following relief:

a) appropriate equitable relief;
b) return of payments made to entities without standing to collect those payments as they were not the owners of the Note and Mortgage, nor did they have rights through indorsement or assignment;

15

c) issuance of a quiet title judgment which provides that the Plaintiff has legal and good title;
d) extinguishment of lien due to fraud and return of payments;
e) such other relief as the court deems equitable and just.

## CERTIFICATION

I certify that the information is true and correct to the best of my

knowledge and belief. If anything I have said is not true, I am subject to

punishment.

Date: June 9, 2014:

Marilynn English *Pro Se*

16

# EXHIBIT 1

Prepared by: K. BAATZ

LOAN #: 020249689

# NOTE

JULY 24, 2002       FAIRFIELD       NEW JERSEY
   [Date]               [City]                       [State]

97 PEASE AVENUE, VERONA, NJ 07044

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 192,500.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
AMERICA'S WHOLESALE LENDER
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.000 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the FIRST day of each month beginning on
SEPTEMBER 01, 2002 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on AUGUST 01, 2017 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
4500 Park Granada, Calabasas, CA 91302-1613
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,624.42 .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Initials: _____

VMP MORTGAGE FORMS - (800)521-7291

 -5N (0005).02    CHL (07/01)        Page 1 of 2             Form 3200 1/01



LOAN #: 020249689

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.



WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
HARILYNN ENGLISH                   -Borrower                                           -Borrower

_____ (Seal)          _____ (Seal)
                                   -Borrower                                           -Borrower

*[Sign Original Only]*

# EXHIBIT 2

**From:** Leslie Larson <LLarson@gleneagletitle.com>
**To:** 'marilynn english' <lishmar@aol.com>
**Subject:** 2002 refinance signing
**Date:** Tue, Jun 3, 2014 12:39 pm

Glen Eagle Title Agency was the settlement agent for the refinance transaction between Marilynn English and America's Wholesale Lender dated July 24, 2002 in the amount of \$192,500.00. I personally acknowledged/witnessed the signature of Marilynn English on the Mortgage/Note. I have provided copies of the same.

## Leslie Larson

*Glen Eagle Title Agency, Inc.*

*363 Route 46 West*

*Fairfield, NJ 07004*

*973-808-2277*

*please visit www.gleneagletitle.com*



**stewart**
Vetted and verified.

---

**From:** Richard Larson [mailto:RLarson@gleneagletitle.com]
**Sent:** Tuesday, June 03, 2014 11:55 AM
**To:** Leslie Larson
**Subject:** FW: good morning

Richard V. Larson

Glen Eagle Title Agency, Inc.

363 Route 46 West

Fairfield, NJ 07004

973-808-2277 (P)

973-808-5008 (F)

www.GlenEagleTitle.com

# EXHIBIT 3

| SETTLEMENT STATEMENT | | U.S. DEPARTMENT OF HOUSING | File Number: 230609 |
|---|---|---|---|
| Optional Form for | | AND URBAN DEVELOPMENT | Loan Number: 026045389 |
| Transactions without Sellers | | OMB Approval No. 2502-0491 | Mtg. Ins. Case Number: |

| NAME OF BORROWER: | Marilynn English |
|---|---|
| ADDRESS: | 97 Pease Avenue, Verona, NJ 07044-1206 |
| NAME OF LENDER: | America's Wholesale Lender |
| ADDRESS: | 1800 Tapo Canyon Road, Simi Valley, CA 93063-6712 |
| PROPERTY ADDRESS: | 97 Pease Avenue, Verona, NJ 07044 |
| | Block 111 Lot 2, County of Essex, Borough of Verona |

□ Principal Residence   □ Other Real Estate

SETTLEMENT AGENT: Glen Eagle Title Agency, Inc., Phone 973-808-2277 Fax 973-808-5008
PLACE OF SETTLEMENT: 363 Route 46 West, Fairfield, NJ 07004

Loan Number: 026045389   SETTLEMENT DATE: 03/21/2003   DISBURSEMENT DATE: 03/26/2003

| L. Settlement Charges | | | M. Disbursement to Others | |
|---|---|---|---|---|
| 800. Items Payable in Connection with Loan | | | 1501. Payoff:20249689-0 | 188,696.97 |
| 801. Loan Origination Fee 0.000% to | | | to Countrywide Home Loans Servicing LP | |
| 802. Loan Discount 0.125% to America's Wholesale Lender | | 394.69 | 1502. Payoff:1665902 | 121,741.00 |
| 803. Appraisal Fee | | | to Countrywide Home Loans Servicing LP | |
| 804. Credit Report | | | 1503. | |
| 805. Flood Check to Landsafe Flood | | 25.00 | | |
| 806. Tax Service Fee to Countrywide Tax Service | | 73.00 | 1504. | |
| 807. Commitment Fee to America's Wholesale Lender | | 495.00 | | |
| 808. | | | 1505. | |
| 809. | | | | |
| 810. | | | 1506. | |
| 811. | | | | |
| 900. Items Required by Lender to be Paid in Advance | | | 1507. | |
| 901. Interest From 03/26/2003 to 04/01/2003 @$43.2400 per day | | 259.50 | | |
| 902. Mortgage Insurance Premium for to | | | 1508. | |
| 903. Hazard Insurance Premium for to | | | 1509. | |
| 904. 1st of. taxes to Verona Township | P.O.C.1,906.00 | | 1510. | |
| 1000. Reserves Deposited with Lender | | | | |
| 1001. Hazard Insurance mo. @$ per month | | | 1511. | |
| 1002. Mortgage Insurance mo. @$ per month | | | | |
| 1003. City Property Taxes mo. @$ per month | | | 1512. | |
| 1004. County Property Taxes mo. @$ per month | | | | |
| 1005. Flood Insurance mo. @$ per month | | | 1513. | |
| 1006. mo. @$ per month | | | | |
| 1007. mo. @$ per month | | | 1514. | |
| 1008. mo. @$ per month | | | | |
| 1009. Aggregate Analysis Adjustment | | 0.00 | 1515. | |
| 1100. Title Charges | | | | |
| 1101. Settlement or closing fee to Glen Eagle Title Agency, Inc. | | 300.00 | 1516. | |
| 1102. Abstract or title search | | | | |
| 1103. Title examination | | | 1517. | |
| 1104. Title Insurance binder | | | | |
| 1105. Document Preparation | | | 1518. | |
| 1106. Notary Fees | | | | |
| 1107. Attorney's fees | | | 1519. | |
| (includes above item No. ) | | | | |
| 1108. Title Insurance to Glen Eagle Title Agency, Inc. | | 1,146.00 | 1520. TOTAL DISBURSED | 310,437.97 |
| (includes above items No. 1102, 1103, 1104, 1106,1108,1109) | | | (enter on line 1603) | |
| 1109. Lender's coverage $ 315,760.00 - 736.00 | | | | |
| 1110. Owner's coverage $ | | | | |
| 1111. | | | | |
| 1112. | | | | |
| 1113. | | | | |
| 1200. Government Recording and Transfer Charges | | | N. NET SETTLEMENT | |
| 1201. Recording Fees Deed $; Mortgage $120.00; Release $ | | 120.00 | | |
| 1202. Realty Transfer Fee Deed $; Mortgage $ | | | 1600. Loan Amount | 315,750.00 |
| 1203. State Tax/stamps Deed $; Mortgage $ | | | | |
| 1204. Notice of Settlement to County Clerk | | 20.00 | 1601. PLUS Cash/Check from Borrower | 0.00 |
| 1205. Record 2nd Mortgage to Glen Eagle Title Agency, Inc. | | 75.00 | | |
| 1300. Additional Settlement Charges | | | 1602. MINUS Total Settlement Charges | 1,963.19 |
| 1301. Survey | | | (line 1400) | |
| 1302. Pest Inspection | | | 1603. MINUS Total Disbursements to Others | 310,437.97 |
| 1303. Overnight Del 1st & 2nd (x 5) to Federal Express | | 55.00 | (line 1520) | |
| 1304. Glen Eagle CREDIT to Borrower (£1,000.00 POC) | | 1,000.00 | | |
| 1305. | | | | |
| 1306. | | | 1604. EQUALS Disbursements to Borrower | 3,348.84 |
| 1307. | | | (after expiration of any applicable | |
| 1308. | | | rescission period required by law) | |
| 1400. Total Settlement Charges (enter on line 1602) | | 1,963.19 | | |

I, the undersigned hereby acknowledge receipt of a completed copy of this statement. To the best of my knowledge the HUD-1A or, RESPA Settlement Statement is a
true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

_signature_   5-21-2003

_signature_   3/21/03

# EXHIBIT 4



Certified Forensic Loan Auditors

## CERTIFIED FORENSIC LOAN AUDITORS, LLC
13101 West Washington Blvd., Suite 140, Los Angeles, CA 90066
Phone: 310-432-6304; Sales@CertifiedForensicLoanAuditors.com
www.CertifiedForensicLoanAuditors.com

# PROPERTY
# SECURITIZATION ANALYSIS REPORT™

"This is a Securitization Analysis Report and not a Forensic Audit Report"

*Prepared for:*

## MARILYNN ENGLISH

*For Property Address*

*97 Pease Avenue*
*VERONA, NJ 07044*

*Prepared on:*
*May 12, 2013*

Disclosure: You have engaged Certified Forensic Loan Auditors, LLC to examine your real estate documents. This information is not to be construed as legal advice or the practice of law, pursuant to *Business and Professions Code § 6125 et seq.* It is the intent of CFLA, its members, auditors and independent contractors, not to engage in activities that could be considered the practice of law by conduct exhibiting any of the following practices: "...the doing and/or performing of services in a court of justice in any matter depending therein throughout the various stages and in conformity with the adopted rules of procedure. It includes legal advice and counsel and the preparation of legal instruments and contracts by which the legal rights are secured although such matter may or may not be depending in a court."



Certified Forensic Loan Auditors

History Record #: 9
Finance:
    Recording Date: 12/02/2004
Document Number: 10155-264
    Document Type: EQUITY OR CREDIT LINE
        Lender: COUNTRYWIDE HM LNS INC
    Loan Amount: $150,000
      Borrower: ENGLISH MARILYN M

      Finance Type: REFINANCE
Mortgage Loan Type: CONVENTIONAL
    Mortgage Term:
Mortgage Rate Type: FIXED
    Mortgage Rate:

History Record #: 10
Finance:
    Recording Date: 01/22/2004
Document Number: 9546-291
    Document Type: EQUITY OR CREDIT LINE
        Lender: COUNTRYWIDE BK
    Loan Amount: $113,200
      Borrower: ENGLISH MARILYNN M

      Finance Type: REFINANCE
Mortgage Loan Type: CONVENTIONAL
    Mortgage Term:
Mortgage Rate Type: FIXED
    Mortgage Rate:

History Record #: 11
Finance:
    Recording Date: 04/02/2003
Document Number: 8791-542
    Document Type: MORTGAGE
        Lender: COUNTRYWIDE BK
    Loan Amount: $63,150
      Borrower: ENGLIS MARILYNN

      Finance Type: REFINANCE
Mortgage Loan Type: CONVENTIONAL
    Mortgage Term:
Mortgage Rate Type: FIXED
    Mortgage Rate:

History Record #: 12
Finance:
    Recording Date: 04/02/2003
Document Number: 8791-537
    Document Type: MORTGAGE
        Lender: AMERICAS WHOLESALE LENDER
    Loan Amount: $315,750
      Borrower: ENGLISH MARILYNN

      Finance Type: REFINANCE
Mortgage Loan Type: CONVENTIONAL
    Mortgage Term: 15 YEARS
Mortgage Rate Type: FIXED
    Mortgage Rate:

# EXHIBIT 5



**Certified Forensic Loan Auditors**

# MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (MERS) ANALYSIS

- The Mortgage has MIN number 1000157-0001388532-8 and is registered at the MERS SERVICER ID website https://www.mers-servicerid.org/sis/search showing Bank of America, NA as Servicer and Fannie Mae as Investor.

- Although MERS records an assignment in the real property records, the promissory note which creates the legal obligation to repay the debt has not been transferred nor negotiated by MERS.

- MERS is never entitled to receive a borrower's monthly payments, nor is MERS ever entitled to receive the proceeds of a foreclosure or MORTGAGE sale.

- MERS is never the owner of the promissory note for which it seeks foreclosure.

- MERS has no legal or beneficial interest in the loan instrument underlying the security instrument for which it serves as "nominee".

- MERS has no legal or beneficial interest in the mortgage indebtedness underlying the security instrument for which it serves as "nominee".

- MERS has no interest at all in the promissory note evidencing the mortgage indebtedness.

- MERS is not a party to the alleged mortgage indebtedness underlying the security instrument for which it serves as "nominee".

- MERS has no financial or other interest in whether or not a mortgage loan is repaid.

# EXHIBIT 6



Certified Forensic Loan Auditors

# SECTION 1: TRANSACTION DETAILS
## BORROWER & CO-BORROWER:

| BORROWER # | CO-BORROWER |
|---|---|
| MARILYNN ENGLISH | NONE |
| **CURRENT ADDRESS** | **SUBJECT ADDRESS** |
| 97 Pease Avenue VERONA, NJ 07044 | 97 Pease Avenue VERONA, NJ 07044 |

# SECTION 2: SECURITIZATION
## SECURITIZATION PARTICIPANTS:

| DEED | DATE | NOTE | DATE |
|---|---|---|---|
| AMERICA'S WHOLESALE LENDER A Countrywide Home Loans, Inc. company 4500 Park Granada Calabasas, CA 91302 | MARCH 21, 2003 | AMERICA'S WHOLESALE LENDER A Countrywide Home Loans, Inc. company 4500 Park Granada Calabasas, CA 91302 | MARCH 21, 2003 |
| | | FANNIE MAE GUARANTEED REMIC PASS-THROUGH CERTIFICATES FANNIE MAE REMIC TRUST 2003-42 | ACQUISITION DATE: April 1, 2003 ISSUE DATE: April 30, 2003 |

The Mortgage and the Note have taken two distinctly different paths. The Mortgage was never transferred. The $315,750 note may have been however pooled, sold, transferred with other loans and mortgages and this pool of loans and mortgages in this security offering of $2,797,067,000. The webpage link can be found at:

REGISTRANT:
http://www.fanniemae.com/syndicated/documents/mbs/remicsupp/2003-042.pdf

Page | 2



Certified Forensic Loan Auditors

On **May 12, 2013**, I researched the Bloomberg online Database at the request of **Certified Forensic Loan Auditors, LLC** on behalf of **Marilynn English** whose property address is noted herein above. The Loan Level Data search conducted using Bloomberg's terminal did not reveal matching characteristics based on Original Amount: **$315,750.00**; Origination Date: **March 21, 2003**; Location of Property: **JN**; Property Type: **Single Family Residence**; Occupancy: **Single Family Residence**; Zip Code **07044**; Loan Type: **15 Year Fixed Rate Mortgage**. Examiner did, however, locate a REMIC TRUST that matches the characteristics for securitizing this loan, namely the Fannie Mae REMIC Trust 2003-42 issued April 30, 2003 in which Bank of America Securities LLC, an affiliate of original lender America's Wholesale Lender.

FANNIE MAE claims ownership of the loan on its web site. **The loan is registered on the MERS web site showing Fannie Mae as the investor.**

Screen shots of this trust from the Bloomberg System follow:

## DESCRIPTION OF SECURITY FROM BLOOMBERG

| FNR 2003-42 JH | Not Priced | | | Yield --/-- | | | | |
|---|---|---|---|---|---|---|---|---|
| As of -- | Collateral 100.0% FNCL 5.8% | | | Prepay 397PSA | | WAL 3.24 | | |

CUSIP 31393BVP7   6.125(219)123   FNCL 5.75 S

1) Bond Summary    2) Group Summary    3) Deal Summary

| Issuer | FANNIE MAE | | | | | 5) Prospectus |
|---|---|---|---|---|---|---|
| Series | 2003-42 | Class JH | Maturity 05/25/2033 | ISIN US31393BVP74 | 6) Lead Mgr | BOA |
| 7) Class Description | PAC(11) | | | BBGID BBG0009J10G9 | 8) Trustee | FNM |

| Current (Apr 2013) | | Original Issue | | Payment Details | | Additional Info |
|---|---|---|---|---|---|---|
| Balance | 7,536,925 | Balance USD | 11,759,000 | Next Pay | 05/25/2013 | TRACE Eligible |
| Factor | 0.640949510 | WAL | 19.6Yr @ 220PSA | Rcd Date | 04/30/2013 | |
| Coupon | 5.50% | 1st Coupon | 5.50% | Pay Date | 25th | |
| Beg Accrue | 04/01/2013 | 1st Payment | 05/25/2003 | Frequency | Monthly | |
| End Accrue | 04/30/2013 | 1st Settle | 04/30/2003 | Pay Delay | 24 Days | |
| Class/Grp Pct | N/A | Dated Date | 04/01/2003 | Day Count | 1 30/360 | |
| [ No Band Apr2013 ] | | PX | 03/14/2003 | Call | Non-Callable | FFIEC Pass |
| | | Class/Grp Pct | 5.9% | | | Min Size 1,000 |
| | | | | | | Incr 1 |

9) Historical Paydown (CPD)

| | May13 | Apr | Mar | Feb | Jan | Dec | Nov | Oct | Sep | Aug | Jul | Jun | | | PSA | CPR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PSA | 430 | 270 | 631 | 446 | 551 | 551 | 1100 | 302 | 404 | 496 | 632 | 717 | 1m | | 430 | 25.8 |
| CPR | 25.9 | 16.2 | 37.0 | 26.7 | 33.1 | 33.1 | 66.0 | 18.1 | 24.3 | 29.8 | 38.0 | 43.0 | 3m | | 453 | 27.2 |
| Fct | – | 0.64 | 0.65 | 0.66 | 0.70 | 0.73 | 0.75 | 0.82 | 0.84 | 0.86 | 0.89 | 0.93 | 6m | | 485 | 29.1 |
| | | | | | | | | | | | | | 12m | | 570 | 34.2 |
| Cpn | – | 5.50 | 5.50 | 5.50 | 5.50 | 5.50 | 5.50 | 5.50 | 5.50 | 5.50 | 5.50 | 5.50 | life | | 478 | 25.9 |

## GROUP SUMMARY
Shows the splitting of the trust into various investment groups

# EXHIBIT 7

# Commonwealth of Massachusetts

### SOUTHERN ESSEX DISTRICT REGISTRY OF DEEDS
### SHETLAND PARK
### 45 CONGRESS STREET
### SUITE 4100
### SALEM, MASSACHUSETTS 01970

**JOHN L. O'BRIEN, JR.**
*Register of Deeds*
(978) 542-1704
Fax: (978) 542-1706
e-mail: southernessexcustomerservice@sec.state.ma.us
www.salemdeeds.com

*A division of the Secretary of the Commonwealth*
**WILLIAM FRANCIS GALVIN, SECRETARY**

Marilyn English
97 Pease Ave
Verona, NJ 07044

Dear Marilyn,

  In an attempt to provide you with more assistance, I have enclosed, an affidavit signed by me, as Register of the Southern Essex District Registry of Deeds, attesting to the presence of a robo-signed signature on your document as listed on McDonnell Property Analytics Approved Robo-signers List.  If you are currently being foreclosed upon, this affidavit may be presented to your attorney, the lender, or the court to show that your chain of title has been corrupted.  For those of you who are not in foreclosure, the affidavit may be presented to your current lender to show that a robo-signed document has in fact been recorded in your chain of title and be part of a request to investigate how this happened and what the lender is going to do to correct it.

  Thank you for contacting us concerning your robo-signed document.  Should you have any further questions or need assistance, please contact my Customer Service Department at 978-542-1704.

With Regards,

John O'Brien
Register of Deeds



# *Commonwealth of Massachusetts*

### SOUTHERN ESSEX DISTRICT REGISTRY OF DEEDS
### SHETLAND PARK
### 45 CONGRESS STREET
### SUITE 4100
### SALEM, MASSACHUSETTS 01970

JOHN L. O'BRIEN, JR.
*Register of Deeds*
(978) 542-1722
Fax: (978) 542-1721
e-mail: jl.obrien@sec.state.ma.us
www.salemdeeds.com

*A division of the Secretary of the Commonwealth*
**WILLIAM FRANCIS GALVIN, SECRETARY**

## AFFIDAVIT OF JOHN L. O'BRIEN, REGISTER OF DEEDS
## SOUTHERN ESSEX DISTRICT

I, John L. O'Brien, Register of the Southern Essex District Registry of Deeds, do hereby swear or aver as follows:

1. As of June 2011 it has been my policy as follows:

   a. IF THERE ARE VARIATIONS OF AN ALLEGED ROBO-SIGNER ON RECORD AT MY REGISTRY – I require that all documents sent for recording that are executed by that alleged robo-signer, be independently verified by an affidavit that the signature is in fact the signature of the named individual, prior to recording. (See Exhibit B attached hereto).

   b. IF THERE ARE NO VARIATIONS OF AN ALLEGED ROBO or SURROGATE SIGNER ON RECORD AT MY REGISTRY – I record the documents and forward them to the Massachusetts Attorney General's Office for review and possible violation of a Crime Against Property, specifically MGL Chapter 266, Section 35A (b) (4).

2. I have instituted this policy based on the opinion of our forensic analyst, Marie McDonnell of McDonnell Property Analytics who has provided me with a list of robo and surrogate signers.

   McDonnell defines a "robo-signer" as: *The person on a legal document processing assembly line whose only task is to sign previously prepared documents affecting title to real property in a robotic-like fashion without reading the documents or verifying the facts contained therein by reviewing primary source evidence. The robo-signer's mission is to expedite the documents' recordation in the public land records or in court proceedings. Additionally, robo-signers regularly fail to establish or simply do not have the authority to execute these documents on behalf of the legal title holder or principal on whose behalf they purport to act.*

   McDonnell defines a "surrogate signer" as: *A person who signs a legal document on behalf of and in the name of another without reading it or understanding the document's contents; surrogate-signers are not authorized to execute these documents on behalf of the legal title holder or principal on whose behalf they purport to act.*

3. I am aware that CHESTER LEVINGS is an alleged robo or surrogate signer.

Signed this 8th day of October 2013, under the pains and penalties of perjury.

John L. O'Brien, Register

## COMMONWEALTH OF MASSACHUSETTS

Essex,ss.

On this 8th day of October, 2013, before me, the undersigned notary public, personally appeared John L. O'Brien, who is personally known to be the person whose name signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

Notary Name:

My Commission Expires: Jan 2, 2015

# EXHIBIT 8

Securitization Auditor

# Chester Levings /

### Falsely Claimed Position of Authority

Chester Levings, at the time he affixed his signature to the ASSIGNMENT (see below), was employed by
Bank of America. He was not, and never was an officer of Mortgage Electronic Registration Systems Inc.,
as per the deposition of MERS Secretary-Treasurer William Hultman.

### Accessory to Fraud - Notary

Notary Public Evette Ohanian was in fact a "robo-signer" in this instance who worked in concert with
fellow "robo-signer" Chester Levings, falsely attesting to the validity of Levings's signature as Assistant
Secretary of Mortgage Electronic Registration Systems Inc.

Ms. Ohanian is in violation of Title 18 USC § 4 - MISPRISION OF FELONY

*"Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States,
conceals and does not as soon as possible make known the same to some judge or other person in civil or military
authority under the United States, shall be fined under this title or imprisoned not more than three years, or both."*

# EXHIBIT 9

This space for Recorder's use

| | |
|---|---|
| DocID# 9352604538923985 | Recording Requested By: **Bank of America** Prepared By: Srbui Muradyan 888-603-9011 450 E. Boundary St. Chapin, SC 29036 |

When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

Property Address:
97 Pease Ave
Verona, NJ 07044-1208
NJ0-AM 13990542        3/27/2011

MIN #: 1000137-0001388532-8        MERS Phone #: 888-679-6377

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is 3300 S.W. 34TH AVENUE, SUITE 101 OCALA, FL 34474 does hereby grant, sell, assign, transfer and convey unto BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP whose address is 13150 WORLD GATE DR, HERNDON VA 20170 all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Original Lender:        **AMERICA'S WHOLESALE LENDER**
Borrower(s):        MARILYNN ENGLISH, AN UNMARRIED WOMAN
Date of Mortgage:        3/21/2003
Original Loan Amount:        $315,750.00

Recorded in Essex County, NJ on: 4/2/2003, book 8791, page 537 and instrument number 752837

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
**5/27/11**

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____

**Chester Levings, Assistant Secretary**

State of California
County of Ventura

On **May 27th, 2011** before me, Evette Ohanian, Notary Public, personally appeared Chester Levings, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person (s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public: Evette Ohanian        (Seal)
My Commission Expires: 12/27/2011

EVETTE OHANIAN
COMM. #1787925
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Dec. 27, 2011

# EXHIBIT 10

# IMPORTANT:  The Key

- The key to the problems regarding foreclosures of mortgages are the ASSIGNMENTS of mortgage.



# IMPORTANT: The Key



- Assignments of mortgage operate to transfer ownership of the mortgage from one bank to another.
- You sue on the note but foreclose under the mortgage.

# What if there is no valid assignment?

- A valid assignment transfers the ownership of the mortgage and allows the assignee of the assignment to begin a foreclosure action.

- Only the holder/owner of the note and mortgage can institute a foreclosure action if the homeowner stops making their mortgage payments.



If the
mortgage
is not
properly
assigned….

the result
is chaos.



# The Paperwork in Securitization Process



Source: Oversight Panel Oversight Report, Examining the Consequences of Mortgage Irregularities for Financial Stability and Foreclosure Mitigation

# EXHIBIT 11

**MARILYNN ENGLISH**
97 PEASE AVE.
VERONA, NJ 07044

3780

55-760/0312
065

12-26-2011
Date

Pay to the
Order of  Bank of America Mtg.              $ 1819.04

One thous eight are Dollars and 04/100

**PNCBANK**

PNC Bank N.A.   060
New Jersey

For  0260453345                              W

⑆031207607⑆ 8193053398⑈  3780



VERIFY THE AUTHENTICITY OF THIS MULTI-TONE SECURITY DOCUMENT

CHECK BACKGROUND AREA CHANGES COLOR GRADUALLY FROM TOP TO BOTTOM

**Bank of America**

NC4-105-01-20
P.O. Box 21848
Greensboro, NC 27420-1848

If unable to apply funds,
please return check to:
P.O. Box 5012
Woodland Hills, CA 91365-5012

11-35/1210

Bank of America

NO. 0001144997

DATE
02/01/2012

AMOUNT
$*******1,819.04*****

PAY ONE THOUSAND EIGHT HUNDRED NINETEEN DOLLARS AND 04 CENTS****

VOID AFTER 180 DAYS

PAY TO:

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
MARILYNN ENGLISH \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
97 Pease Ave \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Verona, NJ 07044

Security Features Included

Details on back

⑪

⑨

‖"0001144997‖"  ⑈:121000358⑈:  12331⸱"78916‖"



PNC Online Banking

Page 1 of 1

(P) PNC *Online Banking*

| Date | Description | Amount | Account |
|---|---|---|---|
| 02/08/2012 | Check 4146 | $1,550.96 | 8103053398 |

This is an image of a check, substitute check, or deposit ticket. Refer to your posted transactions to verify the status of the item. For more information about image delivery click here or to speak with a representative call: 1-888-PNC-BANK (1-888-762-2265) Monday - Friday: 7 a.m. - 10 p.m. ET, Saturday & Sunday: 8 a.m. - 5 p.m. ET.

MARILYNN ENGLISH
97 PEASE AVE.
VERONA, NJ 07044

4146

Pay to the Order of

$1,550.96

PNCBANK
PNC Bank, N.A.   060
New Jersey

For

⑆031207607⑆ 8103053398⑈ 4146

MARILYNN ENGLISH
97 Pease Ave
Verona, NJ 07044

Loan# 26045389
Partial payment check

THE AUTHENTICITY OF THIS MULTI-TONE SECURITY DOCUMENT.    CHECK BACKGROUND AREA CHANGES COLOR GRADUALLY EVENLY TOP TO BOTTOM

Bank of America

105-01-20
Box 21848
sboro, NC 27420-1848

If unable to apply funds,
please return check to:
P.O. Box 5012
Woodland Hills, CA 91365-5012

11-35/1210
Bank of America

NO. 0001272241

DATE
03/02/2012

AMOUNT
$******1,550.96******

VOID AFTER 180 DAYS

PAY ONE THOUSAND FIVE HUNDRED FIFTY DOLLARS AND 96 CENTS****

******************************
MARILYNN ENGLISH ***************
97 Pease Ave ******************
Verona, NJ 07044

Security Features Included

Details on back.

# EXHIBIT 12

June 18, 2012

Marilynn English
97 Pease Avenue
Verona, New Jersey 07044

For Property Address
97 Pease Avenue
Verona, New Jersey 07044

Mortgage Loan Number 26045389

Sent via Certified Mail Nos. 7011 0110 0000 8470 4819,
7011 2970 0000 3012 0821, 7011 2970 0000 3012 0838,
And 7011 2970 0000 3012 0845

## NOTICE OF DEFAULT

**BANK(S:)** Fannie Mae, Freddie Mac        **HOMEOWNER:** Marilynn M. English
and/or Bank of America N.A.

This is a notice that the Bank of America N.A. (BOA) and/or Federal National Mortgage
Association (Fannie Mae(FNMA)) and/or Federal Home Loan Mortgage Corporation
Association (Freddie Mac/FHLMC) have defaulted on their claim on the above Mortgage
in full accordance with the Administrative Procedures Act of 1946 for the property
described as:

   Legal Description:  Essex County  Registry of Deed Book 8701 Page 537

BOA and/or Fannie Mae and/or Freddie Mac were given more than 30 days to present to
the Homeowner proof of claim to the Homeowner's Verification of Proof of Claim.
BOA and/or Fannie Mae and/or Freddie Mac were unable to produce proof of claim,
therefore, BOA and/or Fannie Mae and/or Freddie Mac cannot be a party to enforce the
security instrument pursuant to U.C.C ARTICLE 3-.§3-301, the Real Estate Settlement
Procedures Act (RESPA) and all applicable state and federal law.

Pursuant to U.C.C. – ARTICLE 3-§3-302, Homeowner is entitled to verify through visual
inspection "THE ORIGNAL WET INK SIGNATURE PROMISSORY NOTE" upon
demand.  A photocopy of the instrument does not constitute proof of claim.

Pursuant to U.C.C. – ARTICLE 3-§3-302, BOA and/or Fannie Mae and/or Freddie Mac were requested to provide proof that they are the Note Holder of Due Course and a Real Party in Interest. A photocopy of the instrument is not sufficient proof of holder in Due Course, valid chain of assignment, or that BOA and/or Fannie Mae and/or Freddie Mac are a real party in interest.

BOA and/or Fannie Mae and/or Freddie Mac were asked specifically to clarify via affidavit or bank assay stipulating whether or not they are a creditor following Generally Accepted Accounting principles (GAAP), whereby true double entry book accounting was performed in issuing the loan showing a debit against the Bank's assets as a result of the alleged loan. BOA and/or Fannie Mae and/or Freddie Mac failed to provide GAAP accounting as required. BOA and/or Fannie Mae and/or Freddie Mac have agreed that the balance on said account is $0.00.

BOA and/or Fannie Mae and/or Freddie Mac were informed that failure to provide proof as requested will result in an administrative default.

As of this date, BOA and/or Fannie Mae and/or Freddie Mac have not answered the Homeowner's written request point by point as required by law.

Owner on title hereby declares that the mortgage of BOA and/or Fannie Mae and/or Freddie Mac is null and void.

BOA and/or Fannie Mae and/or Freddie Mac are hereby notified that they are in default and can no longer lay claims on this property or the Homeowner.

BOA and/or Fannie Mae and/or Freddie Mac are hereby given notice that they have 72 hours upon certified receipt of this Notice to enter a rebuttal by showing Verification of Proof of Claim as required. Failure to enter a rebuttal means that the BANK(s) and/or Fannier Mae and Freddie Mac admit(s) to having no claims to this Mortgage and thereby "forever" releases all claims against the Homeowner and this property. BOA and/or Fannie Mae and/or Freddie Mac will have entered a "no contest" to this notice.

After the 72 hours, BOA and/or Fannie Mae and/or Freddie Mac will have exhausted their administrative remedy on this final public filing. BOA and/or Fannie Mae and/or Freddie Mac can no longer lay claim on Homeowner or this property from that date forward.

If BOA and/or Fannie Mae and/or Freddie Mac's Trustee/Attorney attempt to sell or foreclose on this property after this default declaration, then they do so knowing they have no standing or right of enforcement. Therefore, doing so will make them guilty of

extortion, theft and fraud, including fraud upon the court. **All felonies punishable with prison terms.**

Should BOA and/or Fannie Mae or Freddie Mac's Trustee/attorney attempt to proceed with a foreclosure action, they do so at their full commercial liability and shall be named a co-defendant against them in a wrongful foreclosure civil action for 3x the loan amount.

Marilynn M. English

June 18, 2012
Date

STATE OF NEW JERSEY

ESSEX COUNTY

Sworn and Subscribed to
Before Me this 18TH Day of June, 2012

ROBERT J. CONWISE
ATTORNEY AT LAW, STATE OF N.J.

# EXHIBIT 13

Case 2:13-cv-02028-CCC-JBC   Document 39   Filed 06/12/14   Page 62 of 95 PageID: 864

*Phone:*    *215-569-5572*
*Fax:*      *215-832-5572*
*Email:*    *MMcguigan@blankrome.com*

January 10, 2012

Marilynn English
97 Pease Avenue
Verona, NJ 07044

Re:    Borrower(s): Marilynn English (the "Borrower") .
       Property Address: 97 Pease Avenue, Township of Verona, NJ 07044
       Loan Number(s) ending in: 5389 (the "Loan")

Dear Ms. English:

This firm represents Bank of America, N.A., as successor by merger to BAC Home Loans
Servicing, LP ("Bank of America"), for the sole purpose of responding to your correspondence
dated December 9, 2011 (the "Letter"). In the Letter you request information regarding the
Loan. Although couched as a "qualified written request," the information requested in the Letter
goes well beyond that which is available through a qualified written request made under 12
U.S.C. §2605 ("QWR").

As you may be aware, a QWR is a written correspondence which includes a statement of specific
reasons why the borrower believes that its account is in error and which provides sufficient detail
to allow the servicer of the loan to review the borrower's account to determine whether there
were errors made in connection with the account, and to either make appropriate corrections
where errors were made or explain to the borrower why the servicer believes the account is
accurate. A QWR is not a vehicle for a borrower to obtain confidential information concerning
the lender's business practices, trade secrets or other proprietary information, nor can it be used
to support a fishing expedition for documents that may support a claim or as a mechanism for
seeking any other information which does not relate specifically to the borrower's loan. The
Letter seeks information which goes well beyond that which is available through a QWR, while
failing to provide any of the necessary detail regarding any specific error(s) made by the servicer
in connection with the Loan.

Although the Letter is overly broad, unduly burdensome and not in conformity with 12 U.S.C.
§2605, we reviewed Bank of America's file documents in an attempt to obtain information
responsive to those of your inquiries which were consistent with 12 U.S.C. §2605. We will
address those of your inquiries which require a response as follows:

1.    The current interest rate is 5.000%.

January 10, 2012
Page 2

2. The current owner of the note is Fannie Mae, whose address is 13150 World Gate Drive, Herndon, VA 20170.

3. See response to paragraph 2 above for information concerning the current owner of the note. The remainder of this request is respectfully declined, as it seeks documentation and/or information beyond that which is available through a "qualified written request" made under 12 U.S.C. §2605.

4. This request is respectfully declined, as it seeks documentation and/or information beyond that which is available through a "qualified written request" made under 12 U.S.C. §2605.

5. Bank of America has serviced the Loan since January 1, 2009.

6. The previous servicer of the Loan was Countrywide Home Loans Servicing, LP.

7. Enclosed is a Payment History that lists the transactions relating to this Loan during Bank of America's servicing. Please note this history provides pertinent information on payments received, tax and insurance payments disbursed, funds in the suspense/unapplied funds balance, and late charges assessed and paid. There are no codes used in the Payment History that require specific definitions. To date, the fees that have been charged against the account that are not reflected in the Payment History are as follows: inspection fees of $162.00; return payment fees of $20.00; and BPO fees of $190.00.

8. See the enclosed Payment History.

9. The arrears for the Loan are as follows: total outstanding monthly interest payments, $29,024.24; total outstanding monthly principal payments, $40,889.80; and total outstanding fees of $372.00.

10. See the enclosed Payment History.

11. See the enclosed Payment History and response to paragraph 7 above.

12. The current monthly escrow payment of $851.37 is comprises of the following: a county tax payment of $449.40; a hazard insurance payment of $142.44; a shortage payment of $86.74; and a reserve requirement of $172.79.

13. See the enclosed Payment History.

14. See the enclosed Payment History and response to paragraph 7 above. Per the terms and conditions of the aforementioned documents, forced placed insurance, also known as lender secured insurance, can be secured by the lender if notification is received via

900200.00001/12162582v.1

**Bank of America**

Home Loans

400 National Way
Mailstop CA6-919-02-22
Simi Valley, CA 93065

November 19, 2012

Marilynn English
97 Pease Avenue
Township of Verona, NJ 07044

Re:    Property Address: 97 Pease Avenue, Township of Verona, NJ 07044
       Loan Number Ending in: 5389

Dear Ms. English:

We are in receipt of your correspondence dated November 3, 2012, which was received on November 8, 2012, by Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP, regarding the referenced loan.

You requested information regarding the Owner of the Note for this loan, which is as follows:

Federal National Mortgage Association
3900 Wisconsin Avenue, NW
Washington, DC 20016-2892
1.800.732.6643

The concerns addressed in your correspondence require further detailed analysis. We will respond to your request after we have completed our investigation.

If you have any questions in the interim, please contact Christina Argo at: 1.805.578.4974 extension 84974

Sincerely,

*Cindy Repreza*

Cindy Repreza
Litigation Specialist II
Qualified Written Request

# EXHIBIT 14

Case 2:13-cv-02028-CCC-JBC Document 39 Filed 06/26/43 Page 66 of 95 PageID: 8680
Case 2:13-cv-02028-CCC-JBC Document 27 Filed 12/16/43 Page 95 of 90 PageID: 6580
Case 2:13-cv-02028-CCC-JAD Document 4-2 Filed 04/08/13 Page 15 of 18 PageID: 76

Prepared by: DEBORAH L. WAHLENS

LOAN #: REDACTED 5389

# NOTE

ORIGINAL

MARCH 21, 2003          PARSIPPANY          NEW JERSEY
      [Date]                     [City]                  [State]

97 PEASE AVE, TOWNSHIP OF VERONA, NJ 07044
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 315,750.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
AMERICA'S WHOLESALE LENDER

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      5.000 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the      FIRST          day of each month beginning on
MAY 01, 2003          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on      APRIL 01, 2018          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 2,496.93

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of      FIFTEEN          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Initials: ____
VMP MORTGAGE FORMS - (800)521-7291

CMP -5N (0207)          CHL (08/02)(d)          Page 1 of 2          Form 3200 1/01

* 2 3 9 8 1 *

* 0 2 6 0 4 5 3 8 9 0 0 0 0 0 2 0 0 5 N *

Case 2:13-cv-02028-CCC-JBC   Document 39   Filed 06/12/14   Page 67 of 95 PageID: 869
Case 2:13-cv-02028-CCC-JBC   Document 27   Filed 12/18/13   Page 76 of 90 PageID: 511
9/28/201 1 2:16:07 PM   PAGE   17/080   888-294-5658
:13-cv-0202&CC-JAD   Document 4-2   Filed 04/08/13   Page 17 of 18 PageID: 78

LOAN #:   Redacted5389

Notice of Default

. I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a
on date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all
. interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or
.elivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above,
the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be
paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those
expenses include, for example, reasonable attorneys' fees.

7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by
delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note
Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first
class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that
different address.

8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in
this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is
also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety
or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights
under this Note against each person individually or against all of us together. This means that any one of us may be required to
pay all of the amounts owed under this Note.

9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.
"Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the
right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the
Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as
this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this
Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full
of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not
a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written
consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.
However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide
a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which
Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the
expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further
notice or demand on Borrower.

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.
DOING BUSINESS UNDER THE FICTITIOUS
BUSINESS NAME OF AMERICA'S WHOLESALE
LENDER A NEW YORK CORPORATION

BY _____
David A. Spector
Managing Director

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
MARILYNN ENGLISH                -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
                                -Borrower                                        -Borrower

*[Sign Original Only]*

# EXHIBIT 15

**From:** Leslie Larson <LLarson@gleneagletitle.com>
    **To:** 'marilynn english' <lishmar@aol.com>
**Subject:** 2003 refinance signing
    **Date:** Wed, Jun 4, 2014 11:00 am

Glen Eagle Title Agency was the settlement agent for the refinance transaction between Marilynn English and America's Wholesale Lender dated March 21, 2003 in the amount of $315,750.00. I personally acknowledged/witnessed the signature of Marilynn English on the Mortgage/Note. I have provided copies of the same.

## Leslie Larson

*Glen Eagle Title Agency, Inc.*

*363 Route 46 West*

*Fairfield, NJ 07004*

*973-808-2277*

*please visit www.gleneagletitle.com*



**stewart**
Vetted and verified.

# EXHIBIT15a

**From:** Leslie Larson <LLarson@gleneagletitle.com>
**To:** 'marilynn english' <lishmar@aol.com>
**Subject:** 2002 refinance signing
**Date:** Tue, Jun 3, 2014 12:39 pm

Glen Eagle Title Agency was the settlement agent for the refinance transaction between Marilynn English and America's Wholesale Lender dated July 24, 2002 in the amount of $192,500.00. I personally acknowledged/witnessed the signature of Marilynn English on the Mortgage/Note. I have provided copies of the same.

# Leslie Larson

*Glen Eagle Title Agency, Inc.*

*363 Route 46 West*

*Fairfield, NJ 07004*

*973-808-2277*

*please visit www.gleneagletitle.com*

 **stewart**
Vetted and verified.

**From:** Richard Larson [mailto:RLarson@gleneagletitle.com]
**Sent:** Tuesday, June 03, 2014 11:55 AM
**To:** Leslie Larson
**Subject:** FW: good morning

Richard V. Larson

Glen Eagle Title Agency, Inc.

363 Route 46 West

Fairfield, NJ 07004

973-808-2277 (P)

973-808-5008 (F)

www.GlenEagleTitle.com

Prepared by: K. BAATZ

LOAN #  020249689

# NOTE

JULY 24, 2002          FAIRFIELD                    NEW JERSEY
   [Date]                      [City]                        [State]

97 PEASE AVENUE, VERONA, NJ 07044

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 192,500.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
AMERICA'S WHOLESALE LENDER
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  6.000    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the FIRST             day of each month beginning on
SEPTEMBER 01, 2002   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on AUGUST 01, 2017        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
4500 Park Granada, Calabasas, CA 91302-1613
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,624.42       .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  FIFTEEN             calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment .

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Initials: _____

VMP MORTGAGE FORMS - (800)521-7291

(VMP) -5N (0005).02     CHL (07/01)                      Page 1 of 2                                    Form 3200 1/01



LOAN #: 020249689

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.



WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)     _____ (Seal)
MARILYNN ENGLISH                  -Borrower                                    -Borrower

_____ (Seal)     _____ (Seal)
                                  -Borrower                                    -Borrower

*[Sign Original Only]*

| SETTLEMENT STATEMENT | | | U.S. DEPARTMENT OF HOUSING | File Number: 230609 |
|---|---|---|---|---|
| Optional Form for | | | AND URBAN DEVELOPMENT | Loan Number: 026045389 |
| Transactions without Sellers | | | OMB Approval No. 2502-0491 | Mtg. Ins. Case Number: |

| NAME OF BORROWER: | Marilynn English |
|---|---|
| ADDRESS: | 97 Pease Avenue, Verona, NJ 07044-1206 |
| NAME OF LENDER: | America's Wholesale Lender |
| ADDRESS: | 1800 Tapo Canyon Road, Simi Valley, CA 93063-6712 |
| PROPERTY ADDRESS: | 97 Pease Avenue, Verona, NJ 07044 |
| | Block 111 Lot 2, County of Essex, Borough of Verona |

☐ Principal Residence   ☐ Other Real Estate

SETTLEMENT AGENT: **Glen Eagle Title Agency, Inc.**, Phone 973-808-2277 Fax 973-808-5008
PLACE OF SETTLEMENT: 363 Route 46 West, Fairfield, NJ 07004

Loan Number: 026045389 SETTLEMENT DATE: 03/21/2003 DISBURSEMENT DATE: 03/26/2003

| L. Settlement Charges | | M. Disbursement to Others | |
|---|---|---|---|
| 800. Items Payable in Connection with Loan. | | 1501. Payoff:20249089-9 | 188,696.97 |
| 801. Loan Origination Fee 0.000% to | | to Countrywide Home Loans Servicing LP | |
| 802. Loan Discount 0.125% to America's Wholesale Lender | 394.69 | 1502. Payoff:1665902 | 121,741.00 |
| 803. Appraisal Fee | | to Countrywide Home Loans Servicing LP | |
| 804. Credit Report | | 1503. | |
| 805. Flood Check to Landsafe Flood | 25.00 | | |
| 806. Tax Service Fee to Countrywide Tax Service | 73.00 | 1504. | |
| 807. Commitment Fee to America's Wholesale Lender | 495.00 | | |
| 808. | | 1505. | |
| 809. | | | |
| 810. | | 1506. | |
| 811. | | | |
| 900. Items Required by Lender to be Paid in Advance | | 1507. | |
| 901. Interest From 03/26/2003 to 04/01/2003 @$43.2400 per day | 259.50 | | |
| 902. Mortgage Insurance Premium for to | | 1508. | |
| 903. Hazard Insurance Premium for to | | 1509. | |
| 904. 1st qtr. taxes in Verona Township     P.O.C.1,906.00 | | 1510. | |
| 1000. Reserves Deposited with Lender | | 1511. | |
| 1001. Hazard Insurance mo. @$ per month | | | |
| 1002. Mortgage Insurance mo. /@$ per month. | | 1512. | |
| 1003. City Property Taxes mo. @$ per month | | | |
| 1004. County Property Taxes mo. @$ per month | | 1513. | |
| 1005. Flood Insurance mo. @$ per month | | | |
| 1006. mo. @$ per month | | 1514. | |
| 1007. mo. @$ per month | | | |
| 1008. mo. @$ per month | | | |
| 1009. Aggregate Analysis Adjustment | 0.00 | | |
| 1100. Title Charges | | 1515. | |
| 1101. Settlement or closing fee to Glen Eagle Title Agency, Inc. | 300.00 | 1516. | |
| 1102. Abstract or title search | | | |
| 1103. Title examination | | 1517. | |
| 1104. Title Insurance binder | | | |
| 1105. Document Preparation | | 1518. | |
| 1106. Notary Fees | | | |
| 1107. Attorney's fees | | 1519. | |
| (includes above items No. ) | | | |
| 1108. Title Insurance to Glen Eagle Title Agency, Inc. | 1,146.00 | 1520. TOTAL DISBURSED | 310,437.97 |
| (includes above items No. 1102, 1103, 1104, 1106, 1108, 1109) | | (enter on line 1603) | |
| 1109. Lender's coverage $ 315,760.00   736.00 | | | |
| 1110. Owner's coverage $ - | | | |
| 1111. | | | |
| 1112. | | | |
| 1113. | | | |
| 1200. Government Recording and Transfer Charges | | | |
| 1201. Recording Fees Deed: $   Mortgage $120.00   Release $ | 120.00 | N. NET SETTLEMENT | |
| 1202. Realty Transfer Fee Deed $:   Mortgage $: | | | |
| 1203. State Tax/stamps Deed $:   Mortgage $ | | 1600. Loan Amount | 315,750.00 |
| 1204. Notice of Settlement to County Clerk | 20.00 | | |
| 1205. Record 2nd Mortgage to Glen Eagle Title Agency, Inc. | 75.00 | 1601. PLUS Cash/Check from Borrower | 0.00 |
| 1300. Additional Settlement Charges | | | |
| 1301. Survey | | 1602. MINUS Total Settlement Charges | 1,963.19 |
| 1302. Pest inspection | | (line 1400) | |
| 1303. Overnight Del 1st & 2nd (x 5) to Federal Express | 55.00 | 1603. MINUS Total Disbursements to Others | 310,437.97 |
| 1304. Glen Eagle CREDIT to Borrower ($1,000.00 POC) | 1,000.00- | (line 1520) | |
| 1305. | | | |
| 1306. | | 1604. EQUALS Disbursements to Borrower | 3,348.84 |
| 1307. | | (after expiration of any applicable | |
| 1308. | | rescission period required by law) | |
| 1400. Total Settlement Charges (enter on line 1602) | 1,963.19 | | |

The undersigned hereby acknowledges receipt of a completed copy of this statement. To the best of my knowledge the HUD-1A ref. RESPA Settlement Statement is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

Marilynn English    _J - 21 - 2003_
129421922

Glen Eagle Title Agency, Inc.    Leslie Larson    3/21/03

Glen Eagle Settlement System  Printed 03/23/2003 at 15:11    Page 1 of 1    form HUD-1A (2/94)  ref. RESPA

**From:** Leslie Larson <LLarson@gleneagletitle.com>
**To:** 'marilynn english' <lishmar@aol.com>
**Subject:** 2003 refinance signing
**Date:** Wed, Jun 4, 2014 11:00 am

Glen Eagle Title Agency was the settlement agent for the refinance transaction between Marilynn English and America's Wholesale Lender dated March 21, 2003 in the amount of $315,750.00.  I personally acknowledged/witnessed the signature of Marilynn English on the Mortgage/Note.  I have provided copies of the same.

# Leslie Larson

*Glen Eagle Title Agency, Inc.*

*363 Route 46 West*

*Fairfield, NJ 07004*

*973-808-2277*

*please visit www.gleneagletitle.com*



**stewart**
Vetted and verified.

Prepared by: DEBORAH L. WAHLERS

LOAN #: 026045389 

# NOTE

| MARCH 21, 2003 | PARSIPPANY | NEW JERSEY |
|---|---|---|
| [Date] | [City] | [State] |

97 PEASE AVE, TOWNSHIP OF VERONA, NJ 07044
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 315,750.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
AMERICA'S WHOLESALE LENDER
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    5.000 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the FIRST    day of each month beginning on
MAY 01, 2003    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on APRIL 01, 2018    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 2,496.93    .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Initials: _____
VMP MORTGAGE FORMS - (800)521-7291
VMP®-5N (0207)    CHL (08/02)(d)    Page 1 of 2    Form 3200 1/01



* 23991 *



* 0260453890000002005N *

LOAN #: 026045389

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_M. ✓_____ (Seal)          _____ (Seal)
HARI LYNN ENGLISH                -Borrower          -Borrower

_____ (Seal)          _____ (Seal)
                -Borrower          -Borrower

[Sign Original Only]

CHL (08/02)          -5N (0207)          Page 2 of 2          Form 3200 1/01

# COPY SUBMITTED
# BY DEFENSE

Prepared by: DEBORAH L WAHLENS

LOAN #: REDACTED 5389

# NOTE

*ORIGINAL*

| MARCH 21, 2003 | PARSIPPANY | NEW JERSEY |
|---|---|---|
| [Date] | [City] | [State] |

97 PEASE AVE, TOWNSHIP OF VERONA, NJ 07044
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 315,750.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is .
AMERICA'S WHOLESALE LENDER

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.000 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the FIRST day of each month beginning on MAY 01, 2003 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on APRIL 01, 2018 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 2,496.93

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Initials: _____

VMP MORTGAGE FORMS - (800)521-7291

(VMP)-5N (0207)    CHL (08/02)(d)    Page 1 of 2    Form 3200 1/01

* 2 3 9 9 1 *    * 0 2 6 0 4 5 3 8 9 0 0 0 0 0 2 0 0 5 N *

Case 2:13-cv-02028-CCC-JBC Document 39 Filed 06/12/14 Page 80 of 95 PageID: 882
Case 2:13-cv-02028-CCC-JBC Document 27 Filed 12/16/13 Page 76 of 90 PageID: 511
9/28/2011 2:16:07 PM   PAGE   17/080   888-294-5658
:13-cv-02028-CCC-JAD Document 4-2 Filed 04/08/13 Page 17 of 18 PageID: 78

LOAN #: Redacted5389

*Notice of Default*

. I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a .in date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all . interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or .elivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

PAY TO THE ORDER OF
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.
DOING BUSINESS UNDER THE FICTITIOUS
BUSINESS NAME OF AMERICA'S WHOLESALE
LENDER A DIV. OF NEW YORK CORPORATION
BY
David A. Spector
Managing Director

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)      _____ (Seal)
MARILYNN ENGLISH            -Borrower                              -Borrower

_____ (Seal)      _____ (Seal)
                            -Borrower                              -Borrower

*[Sign Original Only]*

# EXHIBIT 16

Prepared by: DEBORAH L. WAHLERS

LOAN #: 026045389

# NOTE

| MARCH 21, 2003 | PARSIPPANY | NEW JERSEY |
|---|---|---|
| [Date] | [City] | [State] |

97 PEASE AVE, TOWNSHIP OF VERONA, NJ 07044
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 315,750.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
AMERICA'S WHOLESALE LENDER

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      5.000 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   FIRST                day of each month beginning on
MAY 01, 2003               . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  APRIL 01, 2018          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $2,496.93

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  FIFTEEN               calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Initials: _____

VMP MORTGAGE FORMS - (800)521-7291

  -5N (0207)        CHL (08/02)(d)                          Page 1 of 2                                    Form 3200 1/01



LOAN #: 026045389

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| | | | |
|---|---|---|---|
| *m.* ✓ | (Seal) | | (Seal) |
| MARILYNN ENGLISH | -Borrower | | -Borrower |
| | (Seal) | | (Seal) |
| | -Borrower | | -Borrower |
| | | | *[Sign Original Only]* |

 -5N (0207)     CHL (08/02)                    Page 2 of 2                    Form 3200 1/01

# EXHIBIT 17

## OUR MANAGER AND THE MANAGEMENT AGREEMENT

### General

We are externally advised and managed by PCM. All of our officers are employees of PCM or its affiliates. The executive offices of PCM are located at 27001 Agoura Road, Third Floor, Calabasas, California 91301 and the telephone number of PCM's executive offices is 1-818-224-7442.

### Officers of Our Manager and Our Servicer

The following sets forth certain information with respect to the executive officers and employees of PennyMac:

| Name | Age | Position Held with PennyMac |
|---|---|---|
| Stanford L. Kurland | 57 | Chairman and Chief Executive Officer of PCM and PLS |
| David A. Spector | 46 | Chief Investment Officer of PCM and PLS |
| Farzad Abolfathi | 48 | Chief Information Officer of PCM and PLS |
| Scott D. Anderson | 44 | Chief Mortgage Operations Officer of PLS |
| Andrew S. Chang | 32 | Chief Business Development Officer of PCM |
| Jeff Grogin | 49 | Chief Legal Officer and Secretary of PCM and PLS |
| Anne D. McCallion | 55 | Chief Financial Officer of PCM and PLS |
| Michael L. Muir | 43 | Chief Capital Markets Officer of PCM and PLS |
| David M. Walker | 54 | Chief Credit Officer of PCM and PLS |
| Julianne Fries | 46 | Chief Compliance Officer of PCM and PLS |
| Aratha M. Johnson | 41 | Chief Administrative Officer of PCM |
| John M. Lawrence | 38 | Managing Director, Loan Servicing of PLS |
| Brandon Ohnemus | 30 | Director of Portfolio Strategy of PCM |
| Lee Trumble | 51 | Director of Due Diligence of PCM |

**Stanford L. Kurland.** Mr. Kurland is the chairman and chief executive officer of PCM and PLS. Mr. Kurland is an accomplished executive in financial services with more than 27 years of experience in the mortgage banking arena. Prior to founding PennyMac in January 2008, Mr. Kurland served as chief financial officer and then chief operating officer at Countrywide. Mr. Kurland is well recognized for his leadership in developing the strategic direction, risk management activities, financial management and organizational development of Countrywide. During his tenure at Countrywide from January 1979 to September 2006, Countrywide grew in market capitalization from just over one million dollars to a leading financial services firm with over $25 billion in market value. Mr. Kurland began his professional career in 1975 in public accounting and practiced as a CPA for the international accounting firm, Grant Thornton LLP. Mr. Kurland holds a BS in Business Administration and Accounting from California State University, Northridge.

**David A. Spector.** Mr. Spector is the chief investment officer of PCM and PLS. In that role he is responsible for oversight of all activities pertaining to investments, and directs the activities of portfolio management, capital markets and credit as each relates to mortgage credit and company credit risk. Prior to joining PennyMac in March 2008, Mr. Spector was co-head of global residential mortgages for Morgan Stanley, based in London. Prior to joining Morgan Stanley in September 2006, Mr. Spector was senior managing director, secondary marketing, for Countrywide, from May 1990 to August 2006, where he was responsible for all secondary marketing activities, including interest rate risk management, and directed loan trading, loan pricing, pipeline hedging, and MSR hedging. Mr. Spector was a member of the Countrywide Asset Liability and Credit Committees, as well as Freddie Mac and Fannie Mae Advisory Committees. Mr. Spector began his career in 1985 at First Boston in the Mortgage Finance Group in New York. Mr. Spector holds a BA in History from the University of California at Los Angeles.

115

# EXHIBIT 18

WHEN RECORDED MAIL TO;
PHELAN HALLINAN & DIAMOND, PC
400 Fellowship Road
Suite 100
Mt. Laurel, NJ 08054
PHS # 134378
MIN #1000157-0001388532-8                MERS Phone #1-888-679 -6377

***Said assignment is to be recorded as a corrective assignment. Said assignment is to correct the assignor name on the assignment recorded on June 3, 2011, in Book 12314, Page 864, in the County of Essex, State of New Jersey.***

## CORRECTIVE ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR AMERICA'S WHOLESALE LENDER ITS SUCCESSORS AND ASSIGNS, the undersigned, as beneficiary or successor thereto, whose address is P.O. BOX 2026 FLINT, MI 48501-2026, hereby grants, conveys, assigns and transfers unto BANK OF AMERICA, N.A., whose address is 7105 CORPORATE DRIVE, MAIL STOP: PTX-C-35, PLANO, TX 75024, its successors and assigns, all beneficial interest under that certain Mortgage dated 03/21/2003.  Said Mortgage is recorded in the State of New Jersey, County of ESSEX.

Mortgage Recorded: 04/02/2003
Original Mortgage Company: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR AMERICA'S WHOLESALE LENDER ITS SUCCESSORS AND ASSIGNS
Original Mortgagors: MARILYNN ENGLISH
Original Loan Amount: $315,750.00
Book: 8791
Page: 537
Property Address: 97 PEASE AVENUE, TOWNSHIP OF VERONA, NJ 07044-1208

The transfer of the mortgage and accompanying rights was effective at the time the loan was sold and consideration passed to the Assignee. This assignment is solely intended to describe the instrument sold in a manner sufficient to put third parties on public notice of what has been sold.

   *TO HAVE AND TO HOLD* the same unto the said Assignee, its successor and assigns, forever subject only to all the provisions contained in the said Mortgage.  And the said Assignor hereby constitutes and appoints the Assignee as the Assignor's true and lawful attorney, irrevocable in law or in equity, in the Assignor's name, place and stead but at the Assignee's cost and expense to have, use and take all lawful ways and means for the recovery of all the said money and interest; and in case of payment, to discharge the same as fully as the Assignor might or could do if these presents were not made.

PHS # 134378

*I AGREE TO THE TERMS OF THIS ASSIGNMENT.*

*Witnessed or Attested by:*                           Cecilia Rodriguez
                                                      Assistant Secretary

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR
AMERICA'S WHOLESALE LENDER.

By: _____

Name: _____
            Aida Duenas
            Assistant Secretary
Title: _____

ACKNOWLEDGMENT

State of California

County of _Ventura_

On _____APR 0 8 2013_____ before me', _____Daisy Chavez_____ Notary Public

Personally appeared___Aida Duenas_____

Who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature _____(Seal)
            Daisy Chavez

                    DAISY CHAVEZ
                    Commission # 1939846
                    Notary Public - California
                    Los Angeles County
                    My Comm. Expires Jun 5, 2015

Activity in Case 2:13-cv-02028-CCC-JBC ENGLISH v. FEDERAL NATIO... http://mail.aol.com/38554-111/aol-6/en-us/mail/PrintMessage.aspx

Case 2:13-cv-02028-CCC-JBC Document 39 Filed 06/02/14 Page 89 of 95 PageID...

From: njdefiling <njdefiling@njd.uscourts.gov>
To: njdefiling <njdefiling@njd.uscourts.gov>
Subject: Activity in Case 2:13-cv-02028-CCC-JBC ENGLISH v. FEDERAL NATIONAL MORTGAGE ASSOCIATION et al
Order on Motion to Dismiss
Date: Fri, May 30, 2014 4:37 pm

---

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to
this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** There is no charge for viewing opinions.

**U.S. District Court**

**District of New Jersey [LIVE]**

## Notice of Electronic Filing

The following transaction was entered on 5/30/2014 at 4:37 PM EDT and filed on 5/29/2014
**Case Name:**      ENGLISH v. FEDERAL NATIONAL MORTGAGE ASSOCIATION et al
**Case Number:**   2:13-cv-02028-CCC-JBC
**Filer:**
**Document Number:** 37

Docket Text:
**OPINION AND ORDER that Defendant's first Motion to Dismiss is DENIED as moot;
that Defendant's second motion to Dismiss is GRANTED without prejudice; and that
even through it appears through Plaintiff's own exhibits and Freddie Mac's
submissions that the 2002 note was discharged, and that Freddie Mac has disclaimed
any interest in Plaintiff's subsequent note, given Plaintiff's pro se status, to the extent
Plaintiff's claims can be cured by way of amendment, Plaintiff is granted (14) days to
reinstate this matter and file an Amended Complaint. Signed by Judge Claire C.
Cecchi on 5/29/14. (gmd, )**


**2:13-cv-02028-CCC-JBC Notice has been electronically mailed to:**

JEFFREY P. CATENACCI     jcatenacci@winston.com

MARILYNN ENGLISH     lishmar@aol.com

VLADIMIR VELASCO PALMA     vladimir.palma@fedphe.com

**2:13-cv-02028-CCC-JBC Notice will not be electronically mailed to::**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1046708974 [Date=5/30/2014] [FileNumber=7594853-0
] [a9b498c1fee40f5f23c4dbbf4b2c2de3ae654c9b83993d90116570020a719725d8d
64fc897643f63c257216771c3e3647ddbec1a7b35e8af747539497740587f]]

**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **MARILYNN ENGLISH** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No. 13-2028(CCC)** |
| **v.** | : | |
| | : | |
| **FEDERAL NATIONAL MORTGAGE** | : | **OPINION & ORDER** |
| **ASSOCIATION, FEDERAL HOME** | : | |
| **LOAN MORTGAGE CORPORATION,** | : | |
| **BANK OF AMERICA N.A.** | : | |
| | : | |
| **Defendants.** | : | |

**CECCHI, District Judge.**

### I.    INTRODUCTION

This matter comes before the Court on Federal Home Loan Mortgage Corporation's ("Defendant or Freddie Mac") Motion to Dismiss Plaintiff Marilynn English's ("Plaintiff") Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), and on Defendant's Second Motion to Dismiss. (ECF No. 18 & 32.) The Court has given careful consideration to the submissions from each party. Pursuant to Fed. R. Civ. R. 78(b), no oral argument was heard. For the reasons that follow, Defendant's first motion to dismiss is denied as moot, (ECF No. 18.), and Defendant's second motion to dismiss is granted without prejudice. (ECF No. 32.)

### II.    BACKGROUND

Plaintiff owns a residential property located at 97 Pease Avenue, Verona, New Jersey. (Compl. 2.) Plaintiff acquired the property on September 19, 1988. (Compl. 4.) On March 21, 2003, Plaintiff refinanced her mortgage loan with Countrywide, America's Wholesale Lender ("AWL"). (Compl. 4.) This is the mortgage that is at issue in the Complaint. Plaintiff brings this

suit to quiet title to her property. (Compl. 4.) Plaintiff alleges that the assignment of her mortgage is "null and void" because of the appearance of a robo-signer. (Compl. 14.)

On February 27, 2013, Plaintiff filed her Complaint in the Superior Court of New Jersey, Chancery Division, Essex County. (Notice of Removal 2.) On April 1, 2013, Plaintiff's Complaint was removed to this Court. (Notice of Removal 1.) On April 8, 2013, Defendants Bank of America and Fannie Mae filed their Motion to Dismiss. (ECF No. 4.)

On October 17, 2013, Freddie Mac filed its first Motion to Dismiss. Freddie Mac argues that Plaintiff fails to state a claim because it is not a proper party to this action. (Def.'s Mot. 1.) On October 28, 2013, Plaintiff filed a Supplemental Answer in Support of Plaintiff's Opposition to Defendants' Motions to Dismiss, and a Second Supplemental Answer. (Pl.'s Supp. Answer ECF No. 19; Pl.'s Second Supp. Answer ECF No. 20.) On November 22, 2013, Plaintiff filed a Supplemental Objection to Dismissal Request for Freddie Mac. (Pl.'s Supplemental Objection ECF No. 22.) On November 26, 2013, this Court granted without prejudice Defendants Bank of America and Fannie Mae's Motion to Dismiss Plaintiff's Amended Complaint. (Order ECF No. 25.) On December 18, 2013, Plaintiff filed a Second Amended Complaint. (Pl.'s Second Compl. ECF No. 27.) On February 17, 2014, Freddie Mac filed a Second Motion to Dismiss, and incorporated by reference its earlier Motion. (Def.'s Second Mot.) On February 18, 2014, Plaintiff filed a Statement Disputing Alleged Facts of Defendant. (Pl.'s Statement)

## III.  LEGAL STANDARD

### A.  Defendant's Motion To Dismiss Pursuant to Rule 12(B)(6)

For a complaint to survive dismissal pursuant to Fed. R. Civ. P. 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

2

570 (2007)).  In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. City of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  Furthermore, "[a] pleading that offers labels and conclusions . . . will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (internal citations omitted).

### B. Liberal Pleading Standard for *Pro Se* Litigants

A *pro se* litigant's complaint is held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  Courts have a duty to construe pleadings liberally and apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name. Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244 (3d Cir. 2013); Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003); Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002).  A *pro se* complaint "can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (citing Haines, 404 U.S. at 520-21); Bacon v. Minner, 229 F. App'x 96, 100 (3d Cir. 2007).

### IV.  DISCUSSION

At issue in Plaintiff's complaint is her note with Countrywide, America's Wholesale Lender that she entered into on March 21, 2003. (Compl. 4, 13; Pl.'s Second Compl. ECF No. 27, Ex. 3, 13.)  Plaintiff generally seeks to bar Defendants from "having or claiming any right or title adverse to Plaintiff to the premises." (Compl. 4, 6, 8.)  In support of her complaint, Plaintiff attaches a record of loan payments to Bank of America from March 27, 2003 through January 8,

3

2013. (Compl. Ex. 2. ) Plaintiff argues in her complaint that Freddie Mac "did not state a claim of who is my true creditor and what Trust is holding my note and mortgage. Nor did they grant my discovery requests." (Compl. 5.) Plaintiff alleges that Freddie Mac is the investor on her loan at issue. (Compl. 5.)

Freddie Mac argues that Plaintiff's complaint should be dismissed because it is not a proper party to this action and a claim by Plaintiff cannot be sustained. (Def's Mot. 6.) Specifically, Freddie Mac alleges that their lien was no longer of record and that they no longer hold any interest in the subject property. (Def's Mot. 6.) It is Freddie Mac's position that Plaintiff mistakenly believes that it is the investor of her loan. (Def's Mot. 6.)

Despite Freddie Mac's arguments, Plaintiff does not allege any facts indicating that Freddie Mac is a proper party to this action. Plaintiff's allegations focus on her 2003 mortgage with Bank of America. In 2002 Freddie Mac was the investor of a loan in the amount of $192,000.00, but the loan was satisfied and discharged in 2003 when Plaintiff refinanced and took out the mortgage loan for $315,750.00. (Def's Mot. 6-8; Pl.'s Second Compl. ECF No. 27, Ex. 3, 12, 13, 14.) None of the supplemental documents that Plaintiff provided to this Court indicate that Freddie Mac falsely represented that they had a claim to her 2003 mortgage. (Pl.'s Second Compl. ECF No. 27, Ex. 9.)[1] Therefore, Plaintiff's quiet title action against Freddie Mac is dismissed without prejudice for failure to state a claim.

---

[1] The Court notes that Plaintiff provided a second amended complaint after Defendant filed its initial motion to dismiss. The Court considers the exhibits attached to this second amended complaint without converting Defendant's motion into a motion for summary judgment. See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (finding that "a document *integral to or explicitly relied upon* in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment").

4

## IV.   CONCLUSION

Based on the reasons set forth above,

**IT IS** on this 29th day of May 2014,

**ORDERED** that Defendant's first Motion to Dismiss is **DENIED** as moot; and it is further

**ORDERED** that Defendant's second Motion to Dismiss is **GRANTED** without prejudice; and it is further

**ORDERED** that even though it appears through Plaintiff's own exhibits and Freddie Mac's submissions that the 2002 note was discharged, and that Freddie Mac has disclaimed any interest in Plaintiff's subsequent note, given Plaintiff's *pro se* status, to the extent Plaintiff's claims can be cured by way of amendment, Plaintiff is granted fourteen (14) days to reinstate this matter and file an Amended Complaint.

**SO ORDERED.**

CLAIRE C. CECCHI, U.S.D.J.

5

Marilynn English *Pro Se*
97 Pease Avenue
Verona, New Jersey 07044

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARILYNN ENGLISH *Pro Se*

     Plaintiff                Civil Action No. 13-2028(CCC)

       v.

FEDERAL NATIONAL MORTGAGE
ASSOCIATION, FEDERAL HOME LOAN
MORTGAGE CORPORATION, BANK
OF AMERICA, N.A.

     Defendants              **PROOF OF SERVICE**

*THuLSon/*

On ~~Wednesday~~,  June 12 2014, Plaintiff served Defendants Fannie Mae/Bank of

America through their Attorney Jeffrey Catenacci at Winston & Strawn LLP

One Riverfront Plaza, 7th Floor, Newark, New Jersey 07102.

via Certified Mail Return Receipt Requested No. 7013 2630 0001 1323 8620

and Freddie Mac, through their Attorney, Vladimir Palma of Phelan Hallinan

& Schmeig at 400 Fellowship Road, Suite 100, Mount Laurel, New Jersey 08054

via certified mail return receipt requested number  7013 2250 0000 2946 3275

Date:  June 12 2014           Marilynn English Pro Se